IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:20-CV-47-D

| | |
|---|---|
| VAMSI MOHAN NALLAPATI, and IGM SURFACES, LLC, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| JUSTH HOLDINGS, LLC, and HARI HARA PRASAD NALLAPATY, | ) ) ) ) |
| Defendants, | ) ) ) |
| v. | ) ) **ORDER** ) |
| VAMSI MOHAN NALLAPATI, VINAY BHARADWAJ, ROHIT GANGWAL, COSMOS GRANITE DALLAS, LLC, COSMOS GRANITE CHARLOTTE, LLC, and COSMOS GRANITE CHARLESTON, LLC, | ) ) ) ) ) ) ) ) |
| Counter Defendants, | ) ) |
| v. | ) ) ) |
| JUSTH HOLDINGS, LLC, and HARI HARA PRASAD NALLAPATY, | ) ) ) ) |
| Counterclaim Defendants. | ) |

This litigation stems from the long and complicated history of a family business operation gone wrong.[1] On February 6, 2020, Vamsi Mohan Nallapati ("Vamsi") filed a complaint against

---

[1] The history of this case is long and involves proceedings in this court, North Carolina state court, and the United States Bankruptcy Court for the Middle District of North Carolina. See Nallapati v. CGM, No. 18-CVS-8557 (N.C. Super. Jan. 22, 2019) (unpublished); In re Cosmos Granite (Cent.), LLC, No. 20-09013, 2022 WL 547960 (Bankr. M.D.N.C. Feb. 23, 2022) (unpublished).

Justh Holdings, LLC ("Justh") and Hari Hara Prasad Nallapaty ("Prasad") (collectively "defendants") seeking cancellation of three trademark registrations, declaratory and injunctive relief, and an accounting for profits [D.E. 1]. On October 9, 2020, Vamsi amended his complaint [D.E. 32]. On January 21, 2021, the parties entered into a consent protective order governing discovery in this case and the related case pending with the Honorable Terrence W. Boyle. See [D.E. 44]; Consent Protective Order, Nallapaty v. Nallapati, 5:20-CV-470 (E.D.N.C. Jan. 25, 2021), [D.E. 32]. On March 10, 2021, the parties agreed to allow Vamsi to amend his complaint and allowed Justh to counterclaim, adding additional defendants [D.E. 55]. On March 10, 2021, Vamsi and IGM Surfaces, LLC (collectively "plaintiffs"), filed an amended complaint [D.E. 56]. On March 31, 2021, defendants answered the amended complaint and alleged three counterclaims against Vamsi, Rohit Gangwal, Vinay Bharadwaj, Cosmos Granite Dallas, LLC, Cosmos Granite Charlotte, LLC, and Cosmos Granite Charleston, LLC (collectively "counter defendants") [D.E. 58]. On March 14, 2022, Vamsi filed an amended answer and counterclaims [D.E. 127].[2]

On March 14, 2022, defendants moved for partial summary judgment [D.E. 124] and filed a memorandum in support [D.E. 125], a statement of material facts [D.E. 126], and an appendix [D.E. 128]. On April 27, 2022, Vamsi responded [D.E. 189] and filed a statement of material facts [D.E. 190] and an appendix [D.E. 191–202]. On May 27, 2022, defendants replied [D.E. 235]. Also on March 14, 2022, Vamsi moved for partial summary judgment [D.E. 143] and filed a memorandum in support [D.E. 144], a statement of material facts [D.E. 145], and an appendix [D.E. 146]. On April 25, 2022, defendants responded [D.E. 180] and filed a statement of material facts [D.E. 181] and an appendix [D.E. 182]. On May 27, 2022, Vamsi replied [D.E. 235].

---

[2] On March 11, 2022, defendants filed a motion to dismiss the first answer and counterclaims [D.E. 118]. In light of Vamsi's amended answer, the court denies defendants' motion as moot.

On March 28, 2022, defendants moved to dismiss Vamsi's counterclaims [D.E. 166] and filed a memorandum in support [D.E. 167]. On April 14, 2022, Vamsi responded [D.E. 175]. On April 28, 2022, defendants replied [D.E. 216].

On April 18, 2022, defendants moved to dismiss counter defendant's counterclaims [D.E. 176] and filed a memorandum in support [D.E. 177]. On May 9, 2022, counter defendants responded [D.E. 223]. On May 23, 2022, defendants replied [D.E. 231].

As explained below, the court denies as moot defendants' motion to dismiss, grants in part defendants' motion for partial summary judgment on the question of fraud in the applications to the USPTO, denies in part plaintiff's motion for partial summary judgment regarding ownership of the trademarks, denies without prejudice defendants' motion to dismiss the amended counterclaims, denies without prejudice defendants' motion to dismiss the amended counterclaims, and grants counter defendants' motion to amend. The court stays proceedings until resolution of the partnership issues in the trial in Nallapaty v. Nallapati, 5:20-CV-470 (E.D.N.C. Sept. 2, 2020).

I.

Prasad and Vamsi are cousins and share a personal history that began in India. See Am. Compl. [D.E. 56] ¶ 11; Statement of Facts ("SOF") [D.E. 126] ¶ 14. In 2000, Vamsi moved to the United States to work as a computer programmer but gradually shifted his focus to granite distribution and sales. See SOF ¶¶ 15–17. Prasad, who worked as a director of an Indian granite supplier, eventually entered into a business relationship with Vamsi. Id. at ¶ 25. They called their venture "Cosmos Granite & Marble" and adopted and used a "spacey" logo with stars and galaxies ("spacey logo") and a logo featuring 3 tiles and the company name ("3-tile logo"). See Am. Compl. ¶¶ 20–27.

3

The business grew, expanding from Raleigh to locations in Atlanta, Chicago, Seattle, Spokane, Portland, and Salt Lake City. See SOF ¶¶ 66–78, 93; see also [D.E. 130] ¶¶ 66–78, 93. At this time, all of the locations used the cosmos marks and name. See SOF ¶ 81; [D.E. 190] ¶ 81. On February 3, 2011, Vamsi applied for and received a federal trademark for the "spacey logo." See SOF ¶ 87.[3] On March 21, 2018, the "spacey logo" trademark lapsed, and on November 16, 2018, the United States Patent and Trademark Office ("USPTO") cancelled the mark. Id. The business (at this point being carried out by an entity named "CGM Group, LLC"), through Vamsi, also attempted to register a trademark for "Cosmos Quartz," but Vamsi eventually abandoned this application. Id. at ¶ 104.

Over time, the relationship between Prasad and Vamsi became strained. On October 29, 2015, Prasad sent an email to Vamsi announcing that Prasad wished to end their "partnership." Id. at ¶ 108; [D.E. 130] ¶ 108; [D.E. 190] ¶ 108. Prasad and Vamsi dispute the cause of the dissolution and whether it was justified.[4] Between October 9 and 11, 2018, following the lapse of the original "spacey logo" trademark, Prasad, with the advice of counsel, filed trademark applications for "Cosmos Granite & Marble," the 3-tile logo, and "Vivid Cosmos." SOF ¶¶ 139, 143; [D.E. 130] ¶¶ 139, 143. As part of the applications, Prasad affirmed to the best of his knowledge and belief that "no other persons, except, if applicable, concurrent users, have the right to use the mark[.]" SOF ¶ 142. On May 21, 2019, the USPTO registered the "Vivid Cosmos" mark. See id. at ¶ 139. On June

---

[3] Vamsi registered the mark in his name, but the parties dispute whether Vamsi's registration was property of a partnership between Vamsi and Prasad or just the property of Vamsi and licenced to the business. See SOF ¶ 88; [D.E. 190] ¶ 88.

[4] The partnership, its assets, its scope, and its eventual dissolution are the subject of Nallapaty, 5:20-CV-470.

4

11, 2019, the USPTO registered the 3-tile logo mark. See id. On July 16, 2019, the USPTO registered the "Cosmos Granite & Marble" mark. See id.

In January 2019, as a result of the growing rift between Vamsi and Prasad, the company was "spun off" into multiple, separately owned, regional branches: (i) Prasad owned the stores on the west coast and in Atlanta and Savannah; (ii) Vamsi owned the stores in Raleigh, Greensboro, and Nashville; (iii) and each owned a 50 percent interest in the stores in Charlotte and Dallas. See id. at ¶ 114; [D.E. 190] ¶ 114. Following the spinoff, all locations continued to use the Cosmos and Vivid trademarks. See SOF ¶ 116; [D.E. 190] ¶ 116. On January 21 and February 17, 2021, Prasad, through his holding company, Justh, sent letters supposedly terminating the licences for the Cosmos trademarks for the spin-off entities that Vamsi controlled. See SOF ¶¶ 149, 152. Despite receiving this letter, Vamsi's branches continued to use the trademarks. See id. at ¶¶ 149, 153; [D.E. 190] ¶ 149, 153. Prasad has three pending trademark applications for "Cosmos Surfaces," "Cosmos," and "Atelier by Cosmos." See SOF ¶ 140.

II.

Defendants seek summary judgment on the question of fraud in Prasad's trademark applications and ask the court to dismiss Vamsi's claim that Prasad's alleged trademarks are invalid ab initio. See [D.E. 124, 166]. Vamsi seeks summary judgment on the issue of invalidity ab initio and on his claim that Prasad did not own the trademarks as a matter of law when Prasad filed applications for the "Cosmos Granite & Marble," the 3-tile logo, and "Vivid Cosmos" trademarks. See [D.E. 149] 14; 15 U.S.C. § 1051(a)(3)(d).

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007);

5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378. A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

Defendants argue that Vamsi has failed to produce "clear and convincing" evidence "showing any genuine issue about whether there was an intention (subjective or otherwise) to deceive by Justh and/or Prasad" when Prasad filed his trademark applications with the USPTO. See [D.E. 125] 19. Vamsi responds that Prasad had knowledge of the marks' use and never had the exclusive rights to the marks. See [D.E. 189] 8–9. Vamsi also argues that Prasad and Justh's

6

arguments amount to "no more than an after-the-fact invention to cover up their willful and knowing application for registration of rights they knew they did not own." Id. at 9.

A court may cancel a registration of a trademark registered in violation of section 1052(b), including by fraud. See 15 U.S.C. §§ 1064(3), 1119. A registered trademark is presumed valid. A party seeking cancellation must rebut this presumption of validity by a preponderance of the evidence. See, e.g., Retail Servs. Inc. v. Freebies Publ'g, 364 F.3d 535, 542 (4th Cir. 2004), abrogated on other grounds by Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545 (2014); Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529 n.4 (4th Cir. 1984).

To prevail on a fraud claim to cancel a trademark, Vamsi must prove by clear and convincing evidence that Prasad knowingly made false, material representations of fact and intended to deceive the USPTO. See In re Bose Corp., 580 F.3d 1240, 1245 (Fed. Cir. 2009); Metro Traffic Control, Inc. v. Shadow Network, Inc., 104 F.3d 336, 340 (Fed. Cir. 1997). "Mere negligence is not sufficient to infer fraud or dishonesty." Jaskiewicz v. Mossinghof, 822 F.2d 1053, 1058 (Fed. Cir. 1987); see Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569, 1582 (Fed. Cir. 1991).

An applicant must state under oath that "to the best of [his] knowledge and belief" no one else has the right to use the mark. 15 U.S.C. § 1051(a)(3)(D). "The oath is phrased in terms of a subjective belief, such that it is difficult . . . to prove . . . fraud so long as the affiant or declarant has an honestly held, good faith belief." Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 420 (4th Cir. 1998) (quotation omitted); see 5 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 31:76 (4th ed. 1998). "Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis." In re Bose, 580 F.3d at 1245. Although direct evidence of deceptive intent is rarely available, a factfinder can infer such intent "from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn

7

from lesser evidence cannot satisfy the deceptive intent requirement." Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008) (citation omitted). When drawing an inference of intent, "the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive." Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc).

The parties dispute whether Prasad must have "knowingly" made false statements with the subjective intent to defraud the USPTO or whether making statements with reckless disregard of their truth suffices. See [D.E. 126] 18; [D.E. 189] 8. In support of applying a "reckless disregard" standard, Vamsi cites Chutter v. Great Mgmt. Group, 2021 TTAB LEXIS 365, at *15 (T.T.A.B. Sept. 30, 2021) (unpublished), where the Trademark Trial and Appeals Board applied the reckless disregard standard. See [D.E. 189] 7. Defendants respond that administrative decisions of the Trademark Trial and Appeals Board are not binding on this court and cite Resorts of Pinehurst for the proposition that a party seeking cancellation a trademark based on fraud must demonstrate that an applicant "knowingly made misrepresentations." [D.E. 235] 3; Resorts of Pinehurst, 148 F.3d at 420; see Metro Traffic Control, 104 F.3d at 340; JFY Properties II, LLC v. Gunther Land, LLC, No. CV 17-1653, 2019 WL 4750340, at *31 (D. Md. Sept. 30, 2019) (unpublished); Maurag, Inc. v. Bertuglia, 494 F. Supp. 2d 395, 399 (E.D. Va. 2007).

In light of Resorts of Pinehurst, this court concludes that the "knowing" standard controls. See, e.g., Resorts of Pinehurst, 148 F.3d at 420. Thus, the court declines to adopt the reckless disregard standard that the Trademark Trial and Appeals Board applied in Chutter.

Alternatively, Vamsi cites several pieces of evidence to support his argument that Prasad knowingly committed fraud. [D.E. 189] 7–9. However, viewing the record under the governing standard, Vamsi has not produced evidence, either direct or circumstantial, supporting a reasonable

8

inference that Prasad or Justh either knowingly made misrepresentations or that Prasad or Justh possessed a subjective intent to defraud the USPTO.

In opposition, Vamsi asserts that the trademark Prasad registered in 2019 was not ceased or abandoned and that Prasad should have known about its use. Id. at 8. Vamsi also contends that Prasad knew in 2019 that the alleged partnership between Vamsi and Prasad did not give Prasad ownership in the trademark rights. Id.

Given the years of unresolved litigation over the nature and dissolution of the business relationship between Prasad and Vamsi, even if Prasad misunderstood his rights in the trademark following the termination of their business relationship, this complexity undermines the notion that Prasad knew in 2019 that he did not own the mark and applied for the trademark anyway. Additionally, the evidence does not show that Vamsi adequately informed Prasad that Vamsi personally claimed all of the trademarks or that the ownership of the trademarks was in dispute in 2019. Likewise, the evidence does not suggest that when Vamsi applied for the "spacey logo" trademark in 2011 that he was doing it for himself and not for the alleged partnership between Vamsi and Prasad. See SOF ¶ 87. Vamsi also has not cited any behavior by Vamsi or the businesses, before or after the termination of the alleged partnership, suggesting that Prasad knew or should have known in 2019 that he had no rights, or only junior rights, in the trademark. In fact, the record suggests the opposite. For example, when faced with the 2018 expiration of the "spacey logo" trademark, Vamsi did nothing and allowed the mark to expire. See id. Prasad was not reasonably on notice in 2019 that Vamsi was contesting ownership of the trademarks at issue in this case when Vamsi did not even assert continuing rights in the lapsed "spacey logo" trademark.

Vamsi also suggests that Prasad made a material misrepresentation in 2019 by not listing Vamsi as a "concurrent user" in the applications given that Vamsi was actively using the marks when

9

Prasad filed the application. See Am. Compl. ¶ 50. An applicant must explicitly state the extent of "concurrent use by others," including the periods and area in which the concurrent use takes place." 15 U.S.C. § 1051(a)(3)(D)(ii). However, an applicant who believes he holds a senior interest in a mark generally has no obligation to report to the USPTO concurrent or prior use by a junior holder. See Rosso & Mastracco, Inc. v. Giant Food, Inc., 720 F.2d 1263, 1266 (Fed. Cir. 1983). Although "in some instances a senior user would be making a false oath where he fails to acknowledge conflicting rights of a junior user which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration[,]" no such "clearly established" rights exist in this case. Id. Moreover, assuming that Vamsi had accrued some common law trademark rights by his use in his stores, such rights do not rise to the "clearly established" rights which obligated Prasad to disclose in his applications. See eCash Techs., Inc. v. Guagliardo, 210 F. Supp. 2d 1138, 1150 (C.D. Cal. 2001) ("It is not enough that Defendants simply be able to show some common law rights to use the mark; they must be able to show that their rights were so 'clearly established' that Plaintiff's failure to disclose Defendants' rights to the PTO would have to constitute fraud." (emphasis omitted)). Vamsi has not forecast sufficient evidence for a reasonable jury to find that Prasad actually knew he did not have a senior interest in the marks or that he had subjective fraudulent intent when he failed to disclose Vamsi's alleged concurrent use.

Next, Vamsi contends that Prasad's use in his trademark applications of pictures from a website that Vamsi owned and operated evinces fraud. [D.E. 189] 8. Specifically, Vamsi contends that Prasad's use of the pictures in his applications constituted a material misrepresentation because these "specimens of use" were from Vamsi's side of the business. Id.

The court rejects Vamsi's argument. Notably, when Prasad submitted the trademark applications, Prasad and Vamsi had "rolled up" their operations under the GCM Group and

10

cooperated in marketing and website operations. See SOF ¶¶ 100–05, 112–13, 117; [D.E. 130] ¶¶ 100–05, 112–13, 117. Because of the roll-up and cooperation in marketing, Prasad had the right to use this material in the applications. Moreover, even though Vamsi argues that the brochure Prasad used in the trademark applications originated in the Raleigh store, no evidence suggests that this promotional material was unique to the Raleigh store or that this brochure did not represent the trademarks' typical use. See [D.E. 189] 8. Furthermore, Vamsi has not produced evidence that Prasad intended to defraud the USPTO by using these specimens. Rather, the evidence shows that Prasad honestly and reasonably believed these specimens to exemplify the trademarks' use in commerce and that Prasad had the right to use them in the applications.

Vamsi also argues that Prasad's conduct, where his wife, not Prasad, typed his signature into the trademark applications, supports Vamsi's fraud claim. Id. Although Prasad's wife did type Prasad's name into the online trademark applications, no evidence suggests that she did so with a subjective intent to deceive the USPTO. Rather, the record demonstrates that Prasad directly authorized his wife to type his name and that he personally reviewed and approved the information in the trademark applications. See [D.E. 185] 11–15.

Even viewing the evidence in the light most favorable to Vamsi, no rational jury could find by clear and convincing evidence that Prasad knowingly made false statements in the trademark applications. Moreover, even if Prasad knowingly made a false statement in his applications, Vamsi's fraud claim lacks an "indispensable element" by failing to forecast any genuine issue of material fact showing that Prasad held a subjective intent to defraud the USPTO. See, e.g., In re Bose, 580 F.3d at 1245. Thus, the court grants defendants' motion for summary judgment on plaintiffs' fraud claim regarding the trademarks.

B.

Vamsi seeks partial summary judgment and argues that Prasad's trademarks are invalid ab initio due to a defect in the signature on the applications. [D.E. 144] 8–11. Specifically, Vamsi asserts that because Prasad's wife, not Prasad, typed in Prasad's signature on the applications, the trademark applications are invalid as a matter of law. Thus, according to Vamsi, the court should cancel the trademarks. [D.E. 189] 6–9.

A trademark application must contain "[a]n electronic signature" which is "personally entered by the person named as the signatory." 37 C.F.R. § 2.193. The Trademark Manual of Examining Procedure ("TMEP"), a USPTO guidance document, specifies that an applicant "must manually enter the elements of the electronic signature" and that "another person . . . may not sign" the document on the applicant's behalf. TMEP § 611.0l(c). According to Vamsi, In re Yusha Zhang, 2021 TTAB LEXIS 465 (T.T.A.B. Dec. 10, 2021) (unpublished), teaches that the appropriate remedy for an unauthorized signature is cancellation of the trademark. See [D.E. 144] 10–11; [D.E. 245] 2–5.

The court rejects Vamsi's argument. As for In re Yusha Zhang, that case featured an illicit patent operation in China that filed over 15,000 defective patents. Id. at *14. "Respondents used the uspto.gov accounts they controlled to file multiple different documents through TEAS, often within minutes and sometimes seconds of each other, that each purported to be directly signed by different named signatories located in different geographic regions." Id. Respondents filed these patents so quickly and in such volume that it was inconceivable that the alleged signatories actually signed, let alone reviewed and approved, the vast majority of the patents of this Chinese patent mill. Id. at *15. The flagrant abuse of USPTO's filing system and volume of illicit submissions of In re

12

Yusha Zhang does not remotely compare to Prasad expressly authorizing his wife to sign three trademark applications on Prasad's behalf.

The other administrative decisions and USPTO guidance documents Vamsi cites are equally unpersuasive. Although such documents clarify the process the USPTO uses in evaluating and adjudicating trademark applications, they do not control what a federal court should do after the USPTO issues a trademark. Moreover, the court rejects Vamsi's reliance on Judge Wilkinson's dissenting opinion for the proposition that TTAB decisions are strongly persuasive authorities and are entitled to great weight in patent and trademark proceedings in federal court. [D.E. 245] 3 (citing Rosenruist-Gestao E Servicos LDA v. Virgin Enters., 511 F.3d 437, 460 (4th Cir. 2007) (Wilkinson, J. dissenting)). Rather, although TTAB decisions can be persuasive, "great weight certainly does not mean obeisance, and it does not even mean deference[.]" Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco, 329 F.3d 359, 379 (4th Cir. 2003).

The United States Court of Appeals for the Federal Circuit has not yet addressed the cancellation of a trademark due to a technical error in a signature. The Federal Circuit, however, did address a similar issue in Ajinomoto Co. v. Archer-Daniels-Midland Co., 228 F.3d 1338, 1343 (Fed. Cir. 2000). In Ajinomoto, plaintiffs argued that irregularities of signature rendered the patent application invalid as a matter of law. In support, the plaintiffs noted that several applicants failed to personally sign a patent application. Ajinomoto, 228 F.3d at 1343–44. During the litigation, defendants sought to cure the alleged defect by filing a declaration that all applicants affirmed the information filed in the original application. Id. at 1344. The Federal Circuit affirmed the district court's decision not to cancel the patent based on the alleged signature defect, holding that "[t]he law does not bar the correction of defects when the defect was not the product of fraud." Id.; cf. In re Bennett, 766 F.2d 524, 527 (Fed. Cir. 1985) (en banc) ("It is not in the public interest to bar all

13

possibility of legal or equitable relief, when such is sought to correct a harmless error. Thus we consider the reality of the practice at issue, guided by legislative and judicial precedent, and mindful of the interest of justice.").

The court finds the reasoning in Ajinomoto persuasive. Prasad failed to personally type his name into the electronic form for the trademark applications. Instead, he expressly directed his wife to type his name into the forms and sign on his behalf. Moreover, Prasad has affirmed the information in the applications in sworn filings in this court. See [D.E. 185] 11–15; [D.E. 180] 23–29. On this record, the court declines Vamsi's invitation to cancel Prasad's trademarks based on the signatures in the applications. Therefore, the court denies Vamsi's motion for summary judgment based on the signatures in the applications.

C.

Vamsi moves for summary judgment to invalidate the trademarks and argues that Prasad did not own the rights to the marks when he filed his trademark applications. [D.E. 149] 14. Although Vamsi does not concede that he and Prasad had a partnership, Vamsi argues that, even if a partnership existed, Prasad was not entitled to sole control of the marks following the partnership's dissolution. See id. at 15. Defendants respond that Prasad properly claims to be the successor to the partnership's nationwide goodwill because he was the partner with connectivity to all stores and the supply of the quality product touted by Cosmos marketing. See [D.E. 183] 6.

"[R]egistration by one who did not own the mark at the time of filing renders the underlying application void ab initio." Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab., 859 F.3d 1023, 1027 (Fed. Cir. 2017) (emphasis omitted); see 15 U.S.C. § 1051(a)(3)(d); Holiday Inn v. Holiday Inns, Inc., 534 F.2d 312, 319 n.6 (C.C.P.A. 1976). Prasad's sole claim to exclusive ownership stems from his assertion that he "alone had the rights in the name and goodwill of the business going

14

forward pursuant to N.C.G.S. § 59-68(b)(2)." [D.E. 239] 5. Prasad also claims to have terminated the partnership unilaterally in 2015 in light of Vamsi's "breach" of the partnership. See SOF ¶¶ 108–09; [D.E. 130] ¶¶ 108–09.

Under North Carolina law:

> partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution, less any damages recoverable under clause (b)(1)b of this section, and in like manner indemnify him against all present or future partnership liabilities.

N.C. Gen. Stat. § 59-68(b)(2). Winding up a partnership "generally involves the settling of accounts among partners and between the partnership and its creditors." Simmons v. Quick–Stop Food Mart, Inc., 307 N.C. 33, 40, 296 S.E.2d 275, 280 (1982); see also N.C. Gen. Stat. § 59–70. The partners who have not wrongfully dissolved the partnership hold the right to wind up the partnership affairs. See N.C. Gen. Stat. § 59–67. The partners with the right to wind up the partnership affairs may, "upon cause shown," obtain winding up by the court. Id.; see Ludwig v. Walter, 75 N.C. App. 584, 588, 331 S.E.2d 177, 180 (1985).

Initially, the court agrees with Vamsi that defendants' memorandum in response largely "addresses non-issues." [D.E. 239] 5. Defendants focus most of their attention on the questions of who has the right to "national goodwill" and whether Prasad was "entitled to continue using the mark in the territory he was using the marks prior to dissolution[.]" [D.E. 183] 20–21. These arguments fail to address whether Prasad was the sole and exclusive owner of the marks following dissolution of the partnership.

Prasad also argues that there is a question of material fact regarding payment, indemnification, and other aspects of the dissolving of the partnership. See id. at 23. Specifically, Prasad argues that Vamsi owed more to the partnership than Vamsi would be entitled to under North Carolina law. Id. Prasad argues that he satisfied the indemnification provision because there was no claim against Vamsi during the windup period, and Prasad "headed off at the pass" any claims by filing for federal trademark protection. Id.

The parties do not agree about any aspect of the alleged partnership between Vamsi and Prasad, including the rights of the parties to the trademark. Several outstanding material disagreements exist concerning who dissolved the partnership, when it happened, whether the dissolution was wrongful, and to what extent Prasad complied with the requirements of N.C. Gen. Stat. § 59-68(b)(2). In fact, even now, Vamsi still denies both that a partnership even existed and that any of the trademarks qualified as partnership property. Given the unresolved material disputes involving these key facts of the partnership and its dissolution, the court denies Vamsi's motion for summary judgment concerning whether Prasad rightfully held the sole and exclusive rights to the trademarks following the dissolution of the partnership.

III.

The remainder of the claims at issue in the motions for summary judgment and motions to dismiss are inextricably tied to whether there was a partnership between Prasad and Vamsi, whether the trademarks are partnership property, and the rights of each individual following the dissolution of the partnership. These questions are at the core of parallel litigation in Nallapaty v. Nallapati, 5:20-CV-470 (E.D.N.C. Sept. 2, 2020).

A district court has inherent authority to stay proceedings sua sponte in order to manage its docket to promote "economy of time and effort for itself, counsel, and for litigants." Landis v. N.

Am. Co., 299 U.S. 248, 254 (1936). When determining whether to stay proceedings, a district court generally considers the interests of judicial economy and the hardship and potential prejudice to the parties. Johnson v. DePuy Orthopaedics, Inc., No. 3:12-cv-2274, 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012) (unpublished). A court also may stay proceedings to avoid inconsistent rulings or "where the outcome of another proceeding may impact or be dispositive of issues pending in the instant case before the court." McCants v. Nat'l Collegiate Athletic Ass'n, No. 1:15-cv-176, 2016 WL 8468060, at *1 (M.D.N.C. Aug. 12, 2016) (unpublished); see Van Laningham v. Allied Ins., No. 1:16CV948, 2018 WL 11238908, at *2 (M.D.N.C. Mar. 15, 2018) (unpublished).

The factors in this case heavily favor a stay. This case primarily concerns the validity of Prasad's trademark, with the other claims and counterclaims being either directly dependent upon or heavily influenced by the resolution of this question. The ownership question is intertwined with questions regarding the alleged partnership. In turn, the partnership question presents a substantial risk of inconsistent rulings given the factual and legal overlap with proceedings in Nallapaty, 5:20-CV-470, which will go to trial in 2023. Moreover, the question of the partnership dissolution and ownership of the partnership property involve novel questions of North Carolina state law. Furthermore, the partnership question appears to be dispositive to the underlying issue of mark ownership. Thus, the interests of judicial economy and avoiding conflicting judgments all weigh heavily in favor of a stay.

The court recognizes that a stay continues uncertainty regarding the validity of the marks and both parties' continued use of the marks may negatively affect the parties' businesses. Such uncertainty, however, is borne by both parties, and neither party is disproportionally prejudiced by a stay. Therefore, the court stays these proceedings pending the trial in Nallapaty, 5:20-CV-470.

17

IV.

In sum, the court DENIES as moot defendants' motion to dismiss [D.E. 118], GRANTS in part defendants' motion for partial summary judgment on the question of fraud in the applications to the USPTO [D.E. 124], DENIES in part plaintiff's motion for partial summary judgment regarding ownership of the trademarks [D.E. 143], DENIES WITHOUT PREJUDICE defendants' motion to dismiss the amended counterclaims [D.E. 166], DENIES WITHOUT PREJUDICE defendants' motion to dismiss the amended counterclaims [D.E. 176], and GRANTS counter defendants' motion to amend [D.E. 284]. The court STAYS the proceedings in this case pending the trial in Nallapaty v. Nallapati, 5:20-CV-470 (E.D.N.C. Sept. 2, 2020).

SO ORDERED. This 9 day of March, 2023.

JAMES C. DEVER III
United States District Judge