IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Western Division
Civil Action No. 5:20-cv-47

| | |
|---|---|
| VAMSI M. NALLAPATI and IGM SURFACES, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>JUSTH HOLDINGS, LLC, and HARI HARA PRASAD NALLAPATY,<br><br>    Defendants,<br><br>v.<br><br>VAMSI M. NALLAPATI, VINAY BHARADWAJ, ROHIT GANGWAL, COSMOS GRANITE DALLAS, LLC, COSMOS GRANITE CHARLOTTE, LLC, and COSMOS GRANITE CHARLESTON, LLC,<br><br>    Counter Defendants. | **DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW** |

Pursuant to the Court's Scheduling Order, DE 323, Defendants respectfully submit this supplemental memorandum of law on the effects of the jury's verdict in *Nallapaty v. Nallapati*, 5:20-cv-470-BO (E.D.N.C.) (the "Partnership Case").

## INTRODUCTION

In the Partnership Case, the jury determined that a partnership existed between Defendant Prasad Nallapaty and Plaintiff Vamsi Nallapati and awarded Prasad damages against Vamsi (the "Partnership Verdict"). After fighting and claiming since this lawsuit and the Partnership Case began in 2020 that Prasad and Vamsi were never partners, the Vamsi Parties *now* claim that they won the Partnership Verdict and that it has no practical impact on this proceeding. They are wrong in both respects.

As to the first, the Court in the Partnership Case this month expressly rejected that very argument by the Vamsi Parties, concluding that Prasad prevailed at trial and therefore is entitled to pre- and post-judgment interest. DE 259 (5:20-cv-470-BO). As to the second, this Court already recognized in its summary judgment order that "the [trademark] ownership question is intertwined with questions regarding

the alleged partnership" such that "the partnership question appears to be dispositive to the underlying issue of mark ownership." DE 312 at 17.

As set out below, the Partnership Verdict is indeed dispositive of most questions of trademark ownership in this case. It therefore resolves most of the claims still pending after the Court's summary judgment order, thereby significantly narrowing the remaining issues for trial. That is because, as a matter of law:

(1) The Cosmos Marks[1] were partnership assets because Prasad and Vamsi were partners and the Cosmos Marks were used only to promote the partnership;

(2) Prasad and Vamsi allocated rights to the Cosmos Marks between them when they dissolved the partnership in 2015 by agreeing to divide the partnership's territories. Specifically, Prasad obtained the Southeast and West territories, along with the rights to the Cosmos Marks in those territories, through mutual agreement as part of the partnership dissolution. Vamsi, in turn, obtained those rights in the East territory and in Boston;

(3) The Prasad Parties'[2] trademark registrations are valid because Prasad owned the exclusive trademark rights in the Southeast and West territories when he filed them. It is well established that a registrant need not own exclusive nationwide rights; rather, all that is required is that the registrant own exclusive rights somewhere in the United States;

(4) The Vamsi Parties'[3] claims for damages fail because the Prasad Parties owned the trademark rights in the territories where the Prasad Parties have been operating and using the Cosmos Marks; and

(5) Prasad has superior rights to the Cosmos Marks in Charlotte and Charleston.

---

[1] As used herein, "Cosmos Marks" means all common law and registered marks related to the Cosmos Granite and Marble business, including the marks covered by the three trademark registrations received by Defendant Justh Holdings, LLC ("Justh") and by the three trademark applications filed by Justh that are still pending. Defendants' Appendix to Statement of Fact, Exhibits Y-DD ("App. Y-DD") (DE 128-25 through DE 128-30).

[2] "Prasad Parties" refers collectively to Prasad and Justh.

[3] "Vamsi Parties" refers collectively to Vamsi and Plaintiff IGM Surfaces, LLC.

The Prasad Parties respectfully request that the Court enter summary judgment on each of these five issues. That leaves for determination at trial only the parties' competing declaratory claims relating to trademark rights to the Cosmos Marks in Dallas (the "Disputed Territory"). That equitable determination can be resolved without a jury.

## FACTUAL STATEMENT[4]

### I. Prasad and Vamsi formed Cosmos as a partnership.

Vamsi and Prasad established the Cosmos Granite and Marble ("Cosmos") stone distribution business in Raleigh in 2005 as a 50/50 partnership. App. A (DE 131) ¶ 37; App. C (DE 128-3) p. 360:5-11; Partnership Case Trial Transcript Vol. 1 ("NP Tr. Vol. 1") p. 53:2-19.[5] The first cousins agreed that Vamsi would run the day-to-day operation of the business, while Prasad would provide a consistent source of quality stone product and payment terms far more favorable than were otherwise available in the market. App. A (DE 131) ¶¶ 32-33, 46-54, 58, 62; NP Tr. Vol. 1 pp. 72:5-81:7. Prasad and Vamsi made the important decisions concerning their new business together, including deciding on the name "Cosmos Granite and Marble," which they used to market and sell products on behalf of their partnership. App. A (DE 131) ¶¶ 35, 61-62; NP Tr. Vol. 1 pp. 82:17-83:16.

Over the years, the partners expanded their Cosmos business to new locations using profits from the Raleigh location, and Prasad also opened other Cosmos locations without Vamsi's involvement. App. A (DE 131) ¶¶ 38, 72-80, 85, 88, 98-99; App. C (DE 128-3) p. 373:21-25; NP Tr. Vol. 1 pp. 197:22-203:2. All locations used the Cosmos name and Cosmos Marks. App. A (DE 131) ¶¶ 97, 100, App. Q (DE 128-17) pp. 14:18-15:18. By 2014, there were Cosmos locations in Raleigh, Greensboro, Atlanta, Chicago,

---

[4] The facts described in this section are either undisputed or were found in Prasad's favor by virtue of the Partnership Verdict. *See Baum v. Golden*, 83 N.C. App. 218, 222, 349 S.E.2d 625, 627 (1986) (explaining that facts "definitely comprehended in the issues and judgment in the prior action" and "put in issue" are given preclusive effect for res judicata purposes).

[5] For ease of reference and to avoid filing duplicate copies of the Partnership Case trial transcripts, the parties have agreed that all citations to the transcripts will refer to Plaintiffs' Exhibits 1-1, 1-2, and 1-3 respectively (i.e., references in this brief to NP Tr. Vol. 1 shall refer to Plaintiffs' Ex. 1-1; NP Tr. Vol. 2 shall refer to Plaintiffs' Ex. 1-2; and NP Tr. Vol. 3 shall refer to Plaintiffs' Ex. 1-3).

Seattle, Charlotte, Nashville, Washington, D.C., Portland, Salt Lake City, and Spokane. App. A (DE 131) ¶¶ 103-06; App Q (DE 128-17) p. 15:12-14; NP Tr. Vol. 1 pp. 197:22-203:2.

As to the trademarks, Vamsi registered an early Cosmos logo in his personal name on September 20, 2011; a new logo was adopted shortly thereafter, and Vamsi's registration of the prior logo eventually lapsed and expired in 2018. App. P (DE 128-16); App. S (DE 133) p. 216:1-23; *see also* Prasad_0000497-503 (July 2012 email from Vamsi to Prasad concerning "changing our logo" and providing images of new logo ultimately used as Cosmos Marks for Prasad's comment, attached hereto as **Exhibit A**). This was entirely consistent with Prasad and Vamsi's partnership. App. U (DE 135) p. 77:14-25. Just like the early trademark registration was held in Vamsi's name on behalf of the partnership, the assets associated with the Raleigh, Greensboro, Atlanta, and Nashville locations, as well as certain real estate acquired and used by the partnership, were also held in Vamsi's name only. NP Tr Vol. 1 pp. 197:22-204:19.

## II.     Prasad and Vamsi dissolved their partnership in 2015.

In 2014, Vamsi proposed to Prasad that all the Cosmos locations roll up into a single ownership structure under a holding company called CGM Group, LLC ("Group"). App. A (DE 131) ¶ 160. Prasad reluctantly agreed, and they rolled up all Cosmos locations into Group, with the exception of the Charlotte location, effective January 1, 2015. *Id.* ¶¶ 169-75. After the rollup, the only assets still held in their partnership were their interests in the Charlotte location, the real estate holdings, and the Cosmos Marks. *Id.* ¶ 176.

The rollup transaction proved to be a disaster for Prasad. Vamsi used Group's size to begin negotiating with new stone suppliers and vendors, causing Cosmos to purchase less stone from the supplier in India that Prasad was affiliated with and on the credit terms Prasad had secured for the partnership. *Id.* ¶ 180. Additionally, Vamsi locked Prasad out of Cosmos's finances, and, upon doing so, Vamsi ran up huge, unexplained debt on Group's line of credit. *Id.* ¶¶ 178-79.

In the summer of 2015, Vamsi wrote to Prasad that "[i]t will be good for the company on the long run to get rid of me" and "I would like to stay no more than end of this year to complete things started and

4

to make sure I leave behind some good things." App. RR (DE 182-2). Several months later, Prasad communicated that he indeed wished to separate from Vamsi, and they agreed to end their partnership. App. A (DE 131) ¶ 181 & Ex. 12; App. K (DE 128-11); NP Tr. Vol. 1 p. 160:22-24; Partnership Case Trial Transcript Vol. 2 ("NP Tr. Vol. 2") pp. 192:2-12, 221:16-20. They agreed to split the Cosmos territories between them, and, starting in January 2016, Vamsi took the Cosmos locations in Raleigh, Greensboro, Nashville, and Washington D.C. ("East"), while Prasad took the locations in Atlanta and Savannah ("Southeast") and those in Seattle, Portland, Spokane, and Salt Lake City ("West"). *Id.* App. A (DE 131) ¶¶ 174, 191-96 & Exs. 13, 15. They have held complete operational and financial control over their respective Cosmos locations ever since. *Id.* 193-196, 200 & Exs. 13-15; NP Tr. Vol. 2 p. 232:11-14; DE 190, Statements 112-113 p. 56; *see also Nallapati v. CGM Group, LLC, et al.*, Case No. 18-CVS-3557 (N.C. Super. Jan. 22, 2019) Trial Transcript Vol. 1 pp. 30:6-31:3; 128:23-129:8; 130:6-142:4, attached hereto as **Exhibit B** (excerpts of opening statement and Vamsi's testimony at trial in dissolution case confirming 2016 territory split).

### III.    Prasad and Vamsi continued to use the Cosmos Marks in their respective allocated territories without objection, despite the onset of litigation between them.

In early 2016, Vamsi claimed that Prasad's Southeast territory owed approximately $1 million to East as an intercompany payable. App. A (DE 131) ¶¶ 197-99; NP Tr. Vol. 1 pp. 131:21-134:6. Prasad disputed this claim, but when he asked for backup from Vamsi and from Group's accountant, none was provided. NP Tr. Vol. 1 pp. 131:21-132:6. As the dispute simmered over the summer of 2016, Vamsi refused to pay for stone his East territory had purchased from the Indian supplier affiliated with Prasad. App. A (DE 131) ¶¶ 196-99; App. G. (DE 128-7); NP Tr. Vol. 1 pp. 131:21-133:11. Vamsi attempted to justify his payment for stone ordered, delivered, and accepted on the grounds that Prasad contested the purported $1 million intercompany payable debt. *Id.* Finally, Vamsi also declined to pay shared expenses associated with the Savannah location that he had himself proposed and a true up payment on real estate that he had acknowledged to Prasad that he "owe[d]." App. A (DE 131) ¶¶ 200-04; NP Tr. Vol. 1 pp. 118:1-

5

121:23; 131:21-132:10; 195:11-196:17; Partnership Case Trial Exhibit ("NP Tr. Ex.") P94, attached hereto as **Exhibit C**.[6]

Not surprisingly, the relationship between Prasad and Vamsi completely fractured over the course of 2016, and they have been involved various disputes and lawsuits ever since. Despite the onset of litigation between them, Vamsi and Prasad continued to use the Cosmos name and Cosmos Marks in their respective territories from January 2016 to the present, without either side trying to stop the other side from using the marks prior to Vamsi's institution of this lawsuit in 2020. App. A (DE 131) ¶¶ 191-95; DE 190, Statement 117-119 pp. 59-62. Additionally, Prasad and Vamsi continued to be partners in the Charlotte location through 2016 and 2017, and thereafter. App. A (DE 131) ¶ 139. Charlotte (because it was not rolled into Group) was the only Cosmos location that remained in the partnership. *Id.* ¶¶ 171, 176.

And, even though their relationship had soured and they were in the process of winding up their partnership, Prasad and Vamsi agreed that Vamsi could use partnership assets from Charlotte to start a new location in Dallas in late 2016. *Id.* ¶ 147. In 2017, without Prasad's consent, Vamsi used Charlotte partnership assets to set up a new Cosmos location in Charleston. *See* Cosmos_0044623, attached hereto as **Exhibit D** (email from Prasad's attorney regarding material being shipped to Charleston). Prasad and Vamsi never reached an agreement as to the allocation of their rights and interests in the partnership assets at Charlotte, Dallas, and Charleston. App. A ¶ 176; App. HH (DE 128-34) RFA 10; App. II (DE 128-35) RFA 7; App. JJ (DE 128-36) RFA 8.

Those locations continued to be partnership assets until Vamsi orchestrated secret asset sale and freeze-out merger transactions in 2020 to take those partnership assets from Prasad without his consent. App. A (DE 131) ¶¶ 217-19; App. JJ (DE 128-36) Interrog. 4. These transactions were the subject, in part, of the Partnership Case. Significantly, when Vamsi ousted Prasad from Charlotte and Charleston, he did so pursuant to an asset purchase agreement that expressly did not transfer any goodwill from Charlotte or Charleston to the new Vamsi-controlled entities. *See* NP Tr. Ex. P107, attached hereto as **Exhibit E**. Vamsi

---

[6] Although certain exhibits introduced at trial were marked "Confidential," no confidentiality was asserted by either party at trial. Any confidentiality in the trial exhibits has thus been waived.

intentionally chose not to transfer the Charlotte location's goodwill because he did not want to pay Prasad for it. *See* NP Tr. Ex. P251, attached hereto as **Exhibit F**. ("I was under the impression, since we will not be buying goodwill etc, it is going to be more cheaper").

## IV. Prasad obtained trademark registration for the Cosmos Marks, and Vamsi responded with further litigation.

After the registration of the original Cosmos logo expired in 2018, and with the assistance of counsel, Prasad filed six trademark applications for the Cosmos Marks. App. U (DE 135) 77:1-10; Apps. BB-GG (DE 128-28 through 128-33). These applications were filed in the name of Justh, pursuant to Prasad's assignment of the Cosmos Marks to Justh. App. PP (DE 139). Registrations issued for three of the applications on May 21, June 11, and July 16, 2019, respectively, App. V-AA (DE 128-25 through 128-27), and three applications remain pending. App. EE-GG (DE 128-131 through 128-133).

When Vamsi filed this lawsuit in early 2020, he sought to bar Prasad from using the Cosmos Marks throughout the country, including in the West and Southeast territories where Prasad had been using the Cosmos Marks exclusively since January 2016 in accordance with the parties' territory allocation agreement. Prasad, for his part, does not object and has never objected to Vamsi's continued use of the Cosmos Marks in the East territory Vasmi has held since January 2016 and in Boston, a location into which Vamsi expanded after their partnership dissolved.[7] DE 58 ¶ 50; App. A (DE 131) ¶ 107, Ex. 13 & 15 (settlement agreements between Vamsi and Prasad, which included no prohibitions or limitations against any of the parties' respective use of any Cosmos Marks in their respective territories).

## V. The relevant results from the lawsuits between Prasad and Vamsi.

The Indian supplier sued Vamsi's East and DC locations in two separate state-court actions in Wake County, North Carolina 2017 over Vamsi's nonpayment of stone invoices, after Prasad and the supplier had tried for more than a year to collect payment from Vamsi without resort to litigation. App. A (DE 131) ¶¶ 197-99; App. G (128-7); NP Tr. Vol. 1 pp. 131:21-133:11. Vamsi did not dispute the amounts owed, and

---

[7] In 2019, Prasad expanded the West territory in to San Francisco, without any objection from Vamsi. App. T (DE 134) 26:13-21. In 2021, Prasad expanded the Southeast territory into Greenville, South Carolina. App. U (DE 135) 142:1-5.

the court entered summary judgment in favor of the Indian supplier in full amount owed in each action. App. A (DE 131) ¶ 198; NP Tr. Vol. 1 pp. 131:21-133:11.

Vamsi sued for judicial dissolution of Group in the North Carolina Business Court in 2018. App. A (DE 131) ¶ 195 & Exhibit 13; App. B-D (DE 128-2 through 128-4); NP Tr. Vol. 1 pp. 136:23-138:2. Even though Prasad and Vamsi had been operating their respective territories separately since 2016, those territories remained nominally in the Group holding company structure as a result of the parties' disputes. App. A (DE 131) ¶ 200. Prasad and Vamsi reached a settlement agreement of some of their disputed issues in January 2019, and, as part of the settlement, they formally spun out ownership of East to Vamsi and of Southeast and West to Prasad in May 2019. App. A (DE 131) ¶¶ 191-95; DE 190, Statements 112-113 p. 56. The settlement also provided for a forensic accounting of Group. NP Tr. Vol. 1 pp. 136:23-138:2. The forensic accountants rejected Vamsi's claim that Southeast owed East $1 million, instead concluding that Prasad was owed hundreds of thousands of dollars. *Id*.; *see also* NP Tr. Ex. D328, attached hereto as **Exhibit G**.

In late 2020, Prasad filed the Partnership Case to recover for Vamsi's breaches of fiduciary duty, relating largely to Vamsi's secret asset sale and freeze-out transactions of Prasad's partnership interests in the Cosmos locations in Charlotte, Charleston, and Dallas. Throughout the Partnership Case, including at trial, Vamsi steadfastly insisted that he alone was responsible for the creation and success of the Cosmos business. NP Tr. Vol. 2 pp. 185:19-188:13, 267:2-268:24. Vamsi falsely denied that he and Prasad were partners, contradicting his prior testimony in other cases and his contemporaneous communications, in which he repeatedly called Prasad his partner and admitted that Prasad provided contributions that were instrumental to the Cosmos getting off the ground in 2005 and growing markedly between 2005 and 2015. App. B (DE 128-2) 102:19-103:18, 117:20-25, 181:23182:3; App. C 362:5-9 (DE 128-3); App. F-N (DE-128-6 through 128-14); App. T (DE 134) 28:9-19; NP Tr. Vol. 1 pp. 197:1-205:5 (Vamsi's testimony at trial in the dissolution matter in which he repeatedly testified that there was a 50/50 agreement between Prasad and himself).

After a three-day trial, the jury did not credit Vamsi's testimony, finding unanimously that a partnership indeed existed between Prasad and Vamsi with respect to their Cosmos business. DE 239 (5:20-cv-470-BO). The jury awarded $490,000 in damages to Prasad. *Id.* On October 6, 2023, the Court in the Partnership Case entered a post-trial Order awarding pre- and post-judgment interest to Prasad, rejecting the Vamsi Parties' argument that Prasad was not a prevailing party. DE 259 (5:20-cv-470-BO).

VI.      **Summary of the Pending Claims**

The Vamsi Parties' pleadings created an overlapping set of claims. In their Second Amended Complaint (DE 56), the Vamsi Parties asserted five claims:

- A claim seeking cancellation of federal registrations held by the Prasad Parties on the basis of fraud and that the registrations are *ab initio*; (Count I)

- A Lanham Act claim for false designation of origin; (Count II)

- A claim seeking a declaration that Vamsi is the rightful owner of the Cosmos Marks; (Count III)

- An Unfair and Deceptive Trade Practices Act claim under North Carolina law; (Count IV) and

- A civil conspiracy claim under North Carolina law. (Count V)

The Prasad Parties responded to the Second Amended Complaint by denying liability and by asserting counterclaims that added counter-defendants, namely the new entities Vamsi created for purposes of the asset sale and freeze-out transactions (the "New Cosmos Entities"). DE 58. In response, the Vamsi Parties filed a reply that improperly purported to raise additional "counterclaims." DE 112. Significantly, the Vamsi Parties filed that pleading after discovery had closed and—without leave of Court—filed an amended pleading on the same day that each side moved for summary judgment. DE 127. Four of these purported counterclaims mirror Counts I, II, IV, and V of the Vamsi Parties' Second Amended Complaint, while adding an allegation that the Prasad Parties' registrations were deficient because Prasad did not personally sign them. (The Court has already rejected the Vamsi Parties' claim that the registrations at issue were procured by fraud or are defective because Prasad did not personally sign them. DE 312 at 6-14).

The remaining purported "counterclaim" included in Vamsi Parties' reply—styled as an "alternative" counterclaim—asserted without identifying any particular legal theory or alleging any supporting facts that if there were a partnership between Prasad and Vamsi (which Vamsi denied) and the

Cosmos Marks were assets of the partnership (which Vamsi also denied), then Prasad converted partnership property and breached fiduciary duties by filing the federal registrations. DE 127 at 35.

The New Cosmos Entities, for their part, filed an answer that also raised counterclaims mirroring the Vamsi Parties' principal claims—for unfair competition and unfair or deceptive trade practices arising from Prasad Parties' use of the Cosmos Marks and registrations of the same. DE 111. They also lodged a third counterclaim for slander *per se* arising from an alleged defamatory statement made by an employee of Justh. *Id*. Without leave of the Court, the New Cosmos Entities amended these counterclaims to add additional allegations regarding their slander claim on April 1, 2022, well after discovery ended and in the middle of summary judgment briefing. DE 172.

## ARGUMENT

The Vamsi Parties' claims for relief in this action all are premised on Vamsi's position that no partnership existed and that Vamsi, alone, owned all the rights in the Cosmos Marks. The jury's verdict in the Partnership Case—that a partnership did indeed exist between Vamsi and Prasad—therefore strikes the very foundation of Vamsi's claims in this case.

As explained below, Partnership Verdict means that (i) the Cosmos Marks were assets of the Prasad-Vamsi partnership; (ii) Prasad obtained rights to the Cosmos Marks in at least the Southeast and West territories following dissolution of the partnership (with Vamsi obtaining, at most, rights in East and Boston); (iii) the Prasad Parties' registrations of the Cosmos Marks are valid; and (iv) Prasad and Vamsi retained joint ownership of the Cosmos Marks in Charlotte and Dallas until Vamsi orchestrated the freeze-out transaction at issue in the Partnership Case in his effort to force Prasad out of those partnership assets. As a result, the Vamsi Parties' claims for affirmative damages for Prasad's use of the Cosmos Marks in the Southeast and West territories and for his securing trademark registrations all fail as a matter of law. As to the judicial determination of which cousin owns the right to use the marks in Charlotte, Charleston and Dallas after the freeze-out transaction and going forward, Prasad holds superior rights in Charlotte and Charleston as a matter of law. The only issue left for a trial is which cousin owns the rights in Dallas.

In the sections that follow, the Prasad Parties explain more fully each of the legal corollaries of the Partnership Verdict and then apply those corollaries to the claims in the case. Those section show what judgment as a matter of law should be entered in the Prasad Parties' favor on each of these claims and issues pursuant to Rule 56(f).

## I. Summary Judgment Independent of the Motion is Proper.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248-49, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis and quotation omitted).

Further, "[a]fter giving notice and a reasonable time to respond, a court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). Notice need not be a formal document; all that is required is notice must "in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989); *see Celotex*, 477 U.S. at 326. Notice can be given where a party puts the other parties on notice to come forward with their evidence. *See Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006).

In its Order on the parties' cross-motions for summary judgment, the Court withheld consideration of whether summary judgment was proper on the parties' remaining claims based upon whether a partnership existed between Vamsi and Prasad. DE 312 at 16-18. The Court subsequently took judicial

11

notice of the verdict in the Partnership Case, and directed the parties to submit to the Court a joint report setting out the parties' positions on the impact of that verdict and what remains to be tried in this case. DE 317 at 4. After considering the joint report, the Court directed the parties to submit further briefing. DE 323. Thus, having given all parties notice and a reasonable opportunity to come forward with evidence and argument regarding the impact of the Partnership Verdict, and for the reasons set out more fully herein, the Prasad Parties respectfully request that the Court enter judgment in the Prasad Parties' favor pursuant to Rule 56(f).

## II.     The Cosmos Marks were partnership assets.

As a first corollary to the Partnership Verdict, the Cosmos Marks were assets of the Prasad-Vamsi partnership as a matter of law. Vamsi has presented no evidence that he and Prasad ever agreed that the trademark rights in the Cosmos Marks were Vamsi's alone. Nor did Vamsi present any evidence that he used the Cosmos Marks in any way outside of the partnership. Instead, Vamsi's factual and legal position in the Partnership Case (and in this case) has always been that no partnership existed, DE 127 ¶¶ 32, 36, 39-46, that he alone owned the Cosmos Marks, DE 56 ¶¶ 65-67; DE 127 ¶¶ 19-48, 50-53 & Counterclaims ¶¶ 9-13, and that he orally licensed them to all the Cosmos locations, DE 56 ¶¶ 21, 65-67; DE 127 ¶¶ 28-34. But because a partnership did exist, as the jury found in the Partnership Case, the undisputed evidence shows that the Cosmos Marks were used by and belonged to the partnership, and not to Vamsi individually.

As a general rule, "[u]nless [a] contrary intention appears, property acquired with partnership funds is partnership property." N.C. Gen. Stat. § 59-38(b). Similarly, property titled in the name of one partner, "which is agreed to be used for partnership purposes, may be deemed partnership property." *Jones v. Shoji*, 110 N.C. App. 48, 53-54, 428 S.E.2d 865, 868 (1993), *aff'd*, 334 N.C. 163, 432 S.E.2d 361 (1993).

According to a leading treatise on trademark law, applying these general rules to trademarks means that "when a partnership is formed for the express purpose of manufacturing or marketing a marked product, then the mark, in the absence of contrary agreement, is deemed part of the partnership property." *See* 4 Callmann on Unfair Comp., Tr. & Mono. § 20:43 (4th ed.). Numerous cases have reached the same conclusion. *See, e.g., Cornaby's LLC v. Carnet, LLC*, No. 214CV00462JNPDBP, 2017 WL 3503669, at *6

(D. Utah Aug. 15, 2017) (concluding that one partner "could not use her efforts within the scope of the partnership to covertly perfect a personal trademark right to the exclusion of the partnership as a whole"); *VIDIVIXI, LLC v. Grattan*, 155 F. Supp. 3d 476, 481 (S.D.N.Y. 2016); *Kristin Marie Conolty d/b/a Fairway Fox Golf v. Conolty O'Connor NYC LLC*, 111 U.S.P.Q.2d 1302, 2014 WL 3427346 at \*10 (TTAB 2014) ("Any trademark rights resulting from the individuals' activities inured to the benefit of the business, jointly owned by the individuals, rather than the individuals themselves.").

That is precisely the case here, where Prasad and Vamsi created the Cosmos Marks specifically to market and distribute through their partnership stone imported from India and other overseas locations under the "Cosmos" name. The evidence shows that (i) the goodwill associated with the Cosmos name was developed through the expenditure of partnership funds and that (ii) Vamsi treated and described the Cosmos Marks as jointly owned, presenting an early version of the logo to Prasad's wife Jaishri for comment in 2010 and describing in it that context as "ours." App S, Dep. Ex. 97 (DE 133 at p. 61).

Vamsi presented no evidence of his use of the Cosmos Marks individually outside the partnership, and so the Cosmos Marks are partnership assets as a matter of law under the authorities cited above. Moreover, even if Vamsi *had* used the Cosmos Marks independently prior to forming his partnership with Prasad—and he did not—any such independent use was abandoned once their partnership was formed. *See Cornaby's*, 2017 WL 3503669, at \*6.

Importantly, these case authorities also confirm that Vamsi's claim to have orally licensed the marks to Prasad and others is ineffectual and void because the partnership owned the Cosmos Marks. *See Lightfoot v. DeBruine*, No. CV-20-00666-PHX-DJH, 2023 WL 2665732, at \*7 (D. Ariz. Mar. 28, 2023) (rejecting an attempted "license" of a mark to an LLC by an individual member because the LLC already owned the common-law rights in the mark through the company's use of it).

For these reasons, the Court should enter judgment as a matter of law that the Cosmos Marks were assets of the Prasad-Vamsi partnership.

**III.** **Prasad owns the trademark rights in at least the West and Southeast territories, and Vamsi owns the trademark rights in at most East and Boston.**

The second legal consequence of the Partnership Verdict is that Prasad obtained the trademark rights in at least the Southeast and West (including San Francisco) territories. Even if former partners do not discuss trademark rights upon dissolution of the partnership, the "goodwill associated with a product and the trademark assigned to the product are inseparable." *Cornaby's*, 2017 WL 3503669, at *7. Thus, even if there is no express division of trademark rights, an agreement dividing territory "coveys the [partnership's] … trademark rights" within the territory conveyed to each former partner. *Id*.[8]

Beyond the territories received from the partnership, the former partners obtain coequal rights to sell products and services and to use the marks in expansion territories after dissolution. However, "any joint right to use the trademark that [a former partner] may have inherited from the [] partnership had to be perfected by actual use" in the expansion territory. *Id*. at *8.

*Cornaby's* supplies the most on-point authority given its factual similarities to the dispute between Prasad and Vamsi. In that case, the summary judgment evidence showed that upon dissolving their partnership, the two sisters agreed that one would operate in Utah and the other would operate in Idaho. *Id.* at *7. There was no agreement, however, as to the division of the trademark rights. *Id*. "But because the goodwill associated with a product and the trademark assigned to the product are inseparable, it is reasonable to infer that the oral agreement conveyed the [] partnership's Utah trademark rights to [the sister operating in Utah]." *Id*. Because the sisters did not agree not to compete for territory in the remaining 48 states, they maintained coequal rights to sell the product and use the trademarks outside of their respective territories in Utah and Idaho. However, "any joint right to use the trademark that [a sister] may have inherited from the [] partnership had to be perfected by actual use" in the expansion territory. *Id*. at *8.

Other cases are in accord with *Cornaby's*. It is widely acknowledged that former partners retain rights in a trademark after dissolution and that the former partners perfect their rights in particular areas

---

[8] Under North Carolina law, partners may agree to a division of partnership assets once they satisfy partnership liabilities. *See* N.C. Gen. Stat. § 59-70.

after dissolution only through actual use of the mark. *See Menendez v. Holt*, 128 U.S. 514, 522 (1888); *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co. (of Muskogee)*, 565 F.2d 629, 630 (10th Cir. 1977); *Lightfoot v. DeBruine*, No. CV-20-00666-PHX-DJH, 2023 WL 2665732, at *8 (D. Ariz. Mar. 28, 2023); *E. W. Tea Co., Ltd. Liab. Co. v. Puri*, 2022 WL 900539, at *6 (D. Or. Mar. 28, 2022). According to another leading treatise, the traditional view is that "in the absence of an agreement to the contrary, no one partner would have the right to prevent another former partner from using the mark." McCarthy's on Trademarks § 16:43.

Here, upon dissolution of the partnership in 2015, Vamsi and Prasad indisputably agreed that Prasad would take the Southeast and West locations and that Vamsi would take the East locations. *See* Statement of Facts, Section II, above. Under *Cornaby's*, their territory-allocation agreement resulted in the Cosmos partnership's Southeast and West trademark rights conveying to Prasad and its East trademark rights to Vamsi, notwithstanding in the absence of an express agreement on the allocation of trademark rights. *Cornaby's*, 2017 WL 3503669, at *7. Likewise, both Vamsi and Prasad enjoyed the right to expand into the remainder of untapped markets across the country, rights that they would have to perfect by actual use. Vamsi exercised his expansion rights, expanding into Boston, and Prasad exercised his rights and expanded into San Francisco, thereby securing their respective exclusive rights in those additional markets.

For most of the country, the parties' division makes practical sense and does not generate any confusion concerns because there is no overlap in territory, and, therefore, no possibility of confusion. For example, Vamsi testified that his East locations cannot service customers serviced by Prasad's West locations because "[i]t's too far logistically," and, "The West Coast and East Coast, they're way too far to sell," while agreeing that any sales in those areas from the East Coast would be "unusual." App. S (DE 133) 214:13-215:6.

Likewise, Vamsi should be judicially estopped from claiming that there is any likelihood of confusion between Prasad's Southeast locations in Atlanta and Savannah and Vamsi's nearest locations in Raleigh, Greensboro, Nashville, and Charlotte. In a prior lawsuit against another former Cosmos business partner, Vamsi commissioned a report authored by former North Carolina Business Court Judge Ben

Tennille and attorney Paul Sun. DE 133 at pp. 11-60. Based on Vamsi's representations, Judge Tennille and Mr. Sun jointly concluded that the Charlotte geographic market was too remote to be reached by the D.C. market and that the typical distribution range was approximately a 100-mile radius from a given location. *Id.* at pp. 24-25. Vamsi, through Group, then submitted the report in support of his motion for summary judgment in the prior lawsuit. *See CGM Group, LLC v. Venkat Are*, Superior Court of Washington, King County (Case No. 16-2-07231-3) Order Granting Plaintiff's Motion for Summary Judgment, p. 2, attached hereto as **Exhibit H**.

"[J]udicial estoppel seeks primarily to protect the integrity of judicial proceedings." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004). "[M]utuality of the parties and detrimental reliance on the part of the party invoking estoppel—both elements of equitable estoppel—are not required for judicial estoppel." *Id*. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Id*. at 22, 591 S.E.2d at 884.

In the prior litigation against the other business partner, Vamsi told the court that the typical distribution range is 100 miles in order to show that there was no competition between Charlotte, Raleigh, and DC. DE 133 at 24-25. He is now judicially estopped from taking a different position before this Court as to the territorial scope of each market.

In sum, there can be no likelihood of confusion between geographically isolated Cosmos locations, especially considering Vamsi's submission in prior litigation showing that locations in excess of 100 miles do not compete with one another. The Prasad Parties therefore respectfully submit that the Court should enter judgment as a matter of law recognizing the parties' territory allocation agreement such that Prasad holds exclusive rights to use of the Cosmos Marks in the Southeast and West (including San Francisco) territories and that Vamsi holds exclusive rights to use of the Cosmos Marks in the East territory and Boston.

**IV.** **The Prasad Parties' trademark registrations of the Cosmos Marks are valid as a matter of law.**

As a third legal consequence of the Partnership Verdict, the Prasad Parties' trademark registrations are valid as a matter of law. The Court already granted summary judgment to the Prasad Parties on Vamsi's allegations that Prasad defrauded the USPTO in applying for the registrations and that the registrations are defective because Prasad did not personally sign the applications. The Partnership Verdict and the corollaries that follow therefrom (and that are discussed above) mean that Prasad's registrations are not void *ab initio*—Vamsi's lone remaining attack on those registrations.[9]

A registrant need not be the sole and exclusive owner of the marks nationwide. *See Tana v. Dantanna's*, 611 F.3d 767, 781 (11th Cir. 2010); *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001); *Land O'Lakes Creameries, Inc. v. Oconomowoc Canning Co.*, 330 F.2d 667, 671 (7th Cir. 1964); *Dudley v. Healthsource Chiropractic, Inc.*, 883 F.Supp.2d 377, 389 (W.D.N.Y. 2012). In fact, even a *junior* user may file an application for a trademark registration. *Allard*, 249 F.3d 564 at 572. These conclusions flow from the proposition that when an applicant registers a trademark, senior and concurrent users who perfected their trademark rights prior to the application retain common-law rights in the geographic area where they have done so. *Id*. "However, the extent of the senior user/non-registrant's territory is frozen as of the date of actual registration to the junior user." *Id*.

Considering that even a junior user may obtain a trademark registration, a registration is void *ab initio* only if the applicant had no ownership rights in the mark. For example, following the dissolution of a partnership where the former partners fail to reach any agreement to divide the business's territory, neither former partner may register the mark without the other former partner. *Kristin Marie Conolty*, 2014 WL 3427346 at *10. That is because, in the absence of an "agreement of record addressing the disposition of

---

[9] The Vamsi Parties also contest the Prasad Parties' three pending trademark applications. However, because it is premature to seek cancelation of a registration that has not yet been granted, the Prasad Parties understand the Vamsi Parties' challenge to these applications to be subsumed within their claim for declaration of ownership of the Cosmos Marks. That challenge therefore fails for the reasons set forth in Section III above and Section VI below.

the assets of the partnership or joint venture . . . upon its dissolution . . . [,]" each former partner retains a "joint interest" in the mark. *Id*. at *7.

In contrast to the facts in *Kristin Marie Conolty*, where the former partners <u>did not</u> agree to divide territory, in *Cornaby's*, the former partners <u>did</u> reach an agreement to divide the territories upon dissolution. Consequently, in *Cornaby's*, the sister/former partner who received the Utah territory in the partnership dissolution obtained exclusive rights in Utah. And because she held exclusive trademark rights in Utah, her trademark registration could not be cancelled so long as the registering sister legitimately believed that she held the superior trademark rights post-dissolution. *C.f.* 2017 WL 3503669 at *7.[10]

So too here—the Prasad Parties' registrations are not void *ab initio* as a matter of law because the facts align with those in *Cornaby's* and are distinguishable from those in other partnership dissolution cases in which the former partners failed to agree on a territory split. After the dissolution of the Prasad-Vamsi partnership, by virtue of his agreement with Vamsi and his own actual use in the Southeast and West territories, Prasad held and holds exclusive rights to the Cosmos Marks in the Southeast and West territories. App. A (DE 133) ¶¶ 191-96 & Exs. 13, 15, App. T (DE 134) 26:8-21. For this reason, Prasad was fully entitled to file a trademark application as the owner of the marks so long as he did so without committing fraud on the USPTO. The Prasad Parties are therefore entitled to a declaration that their registrations of the Cosmos Marks are valid as a matter law, subject only to the common-law rights Vamsi secured in East and in Boston through his actual use prior to the registrations.

---

[10] *Cornaby's* directly addresses whether the registration could be cancelled on the basis of fraud on the USPTO. The parties, however, pointed to the void *ab initio* doctrine in their summary judgment papers. 2016 WL 11591828 (D.Utah) ("[S]*ee also Great Seats, Ltd.*, 84 U.S.P.Q. at 1239 ("if the entity filing the application is not the owner of the mark as of the filing date, the application is void ab initio.") (citing 15 U.S.C. § 1051(a), Trademark Rule 2.71(d), and 37 C.F.R. § 2.71.); *see also Huang*, 849 F.2d at 1460 (opining that the ownership requirement is statutory and cannot be waived)"). By omitting any discussion of the void ab initio doctrine after the parties raised the issue at summary judgment, the opinion implicitly supports the Prasad Parties' position that a registration is not void *ab initio* if the registrant is the owner of at least some individual rights in the mark.

**V.    The parties retained joint ownership of the Cosmos Marks in Charlotte and Dallas after dissolution of the partnership.**

As a fourth and final consequence of the Partnership Verdict, Prasad and Vamsi retained joint ownership of the Cosmos Marks in Charlotte (including any overlapping territory in Greenville) and Dallas following dissolution of the partnership. Unlike the Southeast, West, and East territories covered by the parties' territory allocation agreement, Prasad and Vamsi never agreed how to split ownership of the Cosmos Marks in the Charlotte and Dallas markets. Thus, in these areas, Prasad and Vamsi retained joint ownership of the marks after the partnership dissolution. *Kristin Marie Conolty*, 2014 WL 3427346 at *10.

**VI.    Summary judgment should be entered on nearly all claims asserted by the Vamsi Parties' and the New Cosmos Entities.**

Applying the necessary implications of the Partnership Verdict to the Vamsi Parties' claims significantly reduces the issues before the Court. Specifically, the legal conclusions described above defeat nearly all remaining claims against the Prasad Parties, and judgment should be entered accordingly pursuant Rule 56(f).

**A.    The Vamsi Parties' cancellation claims fail as matter of law.**

The Vamsi Parties' claims to cancel the Prasad Parties' trademark registrations fail as matter of law. The Court previously granted summary judgment in the Prasad Parties' favor on the issue of whether the registrations were procured by fraud and whether the registrations were defective on the grounds that Prasad did not sign the applications personally. DE 312. Thus, the only issue remaining alleged basis for cancellation is whether the registrations are void *ab initio*. As explained in detail above, the registrations are not void *ab initio* because Prasad obtained the exclusive rights to the Cosmos Marks, at a minimum, in the Southeast and West territories after the parties' partnership dissolved. The Prasad Parties now respectfully request the entry of summary judgment on the Vamsi Parties' claims to cancel the registrations (Count I of Vamsi Parties' Second Amended Complaint and their third purported "counterclaim"). DE 56 at 12; DE 127 at 34.

**B. The Vamsi Parties' and the New Cosmos Entities' Lanham Act claims fail as a matter of law.**

The Prasad Parties are likewise entitled to summary judgment on the Vamsi Parties' Lanham Act claims as a result of the Partnership Verdict. With respect to Prasad's activities in the Southeast and West (including San Francisco) territories, Prasad owns the common-law trademark rights as a matter of law. Vamsi cannot have any Lanham Act claims arising out of Prasad's use of the marks in areas where Prasad owns the common-law rights to the marks. In addition, because their respective territories are so far apart, there is no likelihood of confusion, as noted above and as the Prasad Parties explained in their prior summary judgment briefing. DE 129 at 21-25.

With respect to Prasad's expansion into Greenville, South Carolina, the parties remained co-owners of the partnership assets in the disputed territories, including the areas around Charlotte, until Vamsi froze Prasad out in 2020. In cases "where trademark co-ownership is at issue, courts have held that federal claims for dilution and infringement cannot be maintained against co-owners." *Lightfoot v. DeBruine*, No. CV-20-00666-PHX-DJH, 2023 WL 2665732, at *9 (D. Ariz. Mar. 28, 2023). That is because "[a]n owner does not infringe upon his co-owner's rights in a trademark by exercising his own right of use." *Deriminer v. Kramer*, 406 F.Supp.2d 756, 759 (E.D. Mich. 2005). Thus, the Vamsi Parties cannot maintain any damages claims concerning Greenville either, and the Prasad Parties are entitled to summary judgment on all of Vamsi's claims for damages.

The Vamsi Parties' attempt to characterize their arguments as "false designation of origin" claims under Section 1125 of the Lanham Act, rather than an infringement action under Section 1114, does not change this analysis. The "general premise" is that an owner does not violate the Lanham Act by exercising his own right of use, regardless of the specific claims. *See Piccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509, 515 (E.D. Pa. 2015) (citing *Deriminer*, 406 F.Supp.2d at 759).

For all these reasons, the Prasad Parties are entitled to summary judgment on the Vamsi Parties' Lanham Act claims (Count II and first purported "counterclaim"), DE 56 at 14; DE 127 at 31-32, as well as the New Cosmos Entities' unfair competition claims. DE 172 at 29-30.

**C.** **The Vamsi Parties' and the New Cosmos Entities' Chapter 75 claims fail as a matter of law.**

The Vamsi Parties also allege violations of North Carolina's Unfair and Deceptive Trade Practices statute, N.C. Gen. Stat. § 75.1-1 *et seq.*, based on theories that (1) Prasad fraudulently filed his federal and state trademark applications knowing that the information he submitted on his applications was false; (2) Prasad purposely brought trademark infringement counterclaims against the New Cosmos Entities in an anticompetitive manner to stifle competition.

*First*, the Court has already determined that Vamsi failed to present sufficient evidence to support a reasonable inference that the Prasad Parties either knowingly made misrepresentations or that they possessed a subjective intent to defraud the trademark office in his applications. DE 312 at 8-9. As the Court explained, Vamsi failed to cite "any behavior by Vamsi or the businesses suggesting that Prasad knew or should have known in 2019 that he had no rights, or only junior rights, in the trademark. In fact, the record suggests the opposite." *Id*. at 9. Because there has been no evidence that Prasad knew or should have known that he his registrations were invalid, there is no basis for a claim of unfair or deceptive trade practices based on this same alleged fraudulent behavior.

*Second*, to the extent that the Vamsi Parties and the New Cosmos Entities claim that the Prasad Parties committed an unfair and deceptive trade practice by bringing trademark infringement counterclaims against them to "suppress valid competition," this claims also fails. DE 127 at 33; DE 172 at 31. Again, because there is no evidence that Prasad acted with the requisite fraudulent intent in filing his applications, his claims for infringement are not "utterly baseless." Therefore, the Chapter 75 claims against the Prasad Parties are barred by the *Noerr-Pennington* doctrine. *See Reichhold Chems., Inc. v. Goel,* 146 N.C. App. 137, 157, 555 S.E.2d 281, 293 (2001).

Finally, to the extent any of the Chapter 75 claims against the Prasad Parties are predicated on the Vamsi Parties' infringement or false designation of origin claims, the Chapter 75 claims fail for the same reasons that the analogous Lanham Act claims fail. *See* Section IV.B, *supra*.

For all these reasons, the Prasad Parties are entitled to summary judgment on the Vamsi Parties' Chapter 75 claims (Count IV and second purported counterclaim), DE 56 at 16; DE 127 at 33, as well as the New Cosmos Entities' Chapter 75 claims. DE 172 at 31.

**D.  The Vamsi Parties' civil conspiracy claims fail as a matter of law.**

The Vamsi Parties' civil conspiracy claims fail because, for the reasons forth above, no underlying substantive claim remains and there is no standalone claim for civil conspiracy. *See Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76 (2002) ("Civil conspiracy is not an independent cause of action in North Carolina"); *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 WL 3738217, at *7 (E.D.N.C. July 29, 2014) (dismissing conspiracy claim when underlying claims failed). Further, the Vamsi Parties' conspiracy claims fail under the corporate immunity doctrine, as Justh cannot conspire with its officer. *See State ex rel. Cooper v. Ridgeway Brands Mfg., LLC,* 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007), *aff'd in part and rev'd in part on other grounds,* 362 N.C. 431, 666 S.E.2d 107 (2008); DE 167 at 11-12. The Prasad Parties are therefore entitled to summary judgment on the Vamsi Parties' civil conspiracy claims (Count V and fifth purported counterclaim). DE 56 at 17; DE 127 at 35.

**E.  The Prasad Parties are entitled to summary judgment declaring that they own exclusive rights to the Cosmos Marks in Charlotte and Charleston.**

As a result of the Partnership Verdict, all that remains for adjudication is the parties' dispute over ownership of the Cosmos Marks in the territories Prasad and Vamsi did not divide by agreement: Charlotte (including any overlapping territory in Greenville), Charleston, and Dallas. As to these territories, Prasad respectfully requests summary judgment declaring that he has superior rights in Charlotte and Charleston.

Savannah is part of the Southeast territory that Prasad received under the parties' territory allocation agreement, which went into effect in January 2016. In 2017, Vamsi used assets from the Charlotte location still held in their partnership to expand into Charleston.

A party perfects trademark rights by actual use. *Love*, 565 F.2d at 630; *Cornaby's*, 2017 WL 3503669 at *7. Considering that Prasad's exclusive rights in the Savannah market date to no later than January 2016, the Prasad Parties have superior rights to the Vamsi Parties in the areas surrounding Savannah

(including Charleston). To that end, with respect to the Vamsi Parties' declaratory claims, the Prasad Parties respectfully request summary judgment that they own the exclusive rights in the Savannah market and enjoining the Vamsi Parties from continuing to use the marks in Charleston.

The Prasad Parties are also entitled to summary judgment on their claim to both Charlotte (including any overlapping territory in Greenville) and Charleston. The Prasad Parties began filing their trademark applications on October 8, 2018. App. Y (DE 128-25). In 2020, and after the Prasad Parties filed the applications, the Vamsi Parties conveyed the Charlotte and Charleston assets to the New Cosmos Entities without Prasad's knowledge or involvement. These were new companies organized for the very purpose of excluding Prasad. Significantly, Vamsi conveyed the Charlotte and Charleston Cosmos assets to the New Cosmos Entities (Cosmos Charlotte and Cosmos Charleston) without conveying any goodwill. *See* **Exhibit E** (NP Tr. Ex. P107). Vamsi did so expressly and by design, as a way to avoid paying Prasad for the goodwill. *See* **Exhibit F** (NP Tr. Ex. P251) ("I was under the impression, since we will not be buying goodwill etc. it is going to be more cheaper.").

Trademark rights cannot be assigned in the absence of goodwill. *See* 15 U.S.C. § 1060(a)(1); *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir.1984) ("[A] trademark cannot be sold or assigned apart from [the] goodwill it symbolizes[.]"). Therefore, the priority of the trademark rights owned by the New Cosmos Entities dates no earlier than 2020 because those entities did not receive any of the prior goodwill in those locations. Considering that the Prasad Parties' registrations (received on May 21, 2019; June 11, 2019; and July 16, 2019) have priority over whatever rights the New Cosmos Entities might have established starting in 2020, the Prasad Parties are also entitled to summary judgment declaring that they have superior rights in Charlotte, including any overlapping territory in Greenville, as well as in Charleston on this additional ground.

### VII. Factual disputes necessitate a trial on equitable grounds without a jury as to the rights to the Cosmos Marks in Dallas.

For the reasons set forth above, the only remaining territory in dispute and not subject to disposition at summary judgment is Dallas. With respect to that market, the Court may adjudicate the parties' respective

rights using its equitable powers. In so doing, the equitable considerations are akin those used by a court when dividing joint assets in a partition action under North Carolina law. *See Tarr v. Zalaznik*, 264 N.C. App. 597, 601, 826 S.E.2d 245, 249 (2019). The equitable relief in such actions consists of "the doing of complete, essential, and perfect justice between all parties," and in determining the parties' respective rights, "the court has jurisdiction to adjust all equities in respect to the property," including making an unequal division of assets. *Id.* at 602, 826 S.E.2d at 250.

After receiving evidence at trial on the equitable rights in the Dallas, the Prasad Parties will respectfully request that the Court order and declare that Prasad has the superior rights to the Cosmos Marks in Dallas. Alternatively, after trial, the Prasad Parties request that the Court order and declare either that (i) both Prasad and Vamsi may use the Cosmos Marks in Dallas; or (iii) both Prasad and Vamsi are enjoined from using the marks in the Dallas. The paragraphs that follow briefly summarize the facts that the Prasad Parties expect to show at trial on this issue.

The Prasad Parties believe the evidence will show that Vamsi secretly resented his 50/50 partnership with Prasad. NP Tr. Vol. I pp. 134:7-136:22; NP Tr. Vol. 2 p. 184:11-23; *see also* NP Tr. Ex. P078, attached hereto as **Exhibit I**. In particular, Vamsi felt he was entitled to more as the partner who ran the day-to-day operations while Prasad was in India. *Id*. Vamsi believed this despite earning millions of dollars through the partnership with Prasad's support and contributions over the years. NP Tr. Vol. 2 pp. 263:15-264:15. Indeed, in 2005 when the partnership began, Vamsi's reported taxable income was around $100,000 per year. *Id*. By 2015, Vamsi was reporting more than $5 million in taxable income per year. *Id*.

To that end, when Vamsi got the opportunity to turn the tables on Prasad, he took it. Specifically, Vamsi convinced Prasad to roll most of the locations into Group with promises he would not honor. Vamsi then used Group to Prasad's detriment until they agreed to split the partnership. App. A (DE 131) ¶¶ 177-182. Vamsi also hurt Prasad in the course of the partnership split through his tax fraud.

From the beginning, tax reporting was among Vamsi's day-to-day responsibilities for the Cosmos businesses. In fraudulent violation of the tax laws, Vamsi depreciated millions of dollars of stone slabs to reduce taxable income. While Vamsi did not try to hide the tax fraud from Prasad, Prasad did not have

sufficient knowledge of the United States tax laws to understand the intricacies and ramifications of Vamsi's scheme.

Specifically, Vamsi artificially lowered the value of inventory more than one year old, despite selling the same at above costs, which directly violates Supreme Court precedent. *See* Partnership Case Trial Transcript ("NP Tr. Vol. 3") pp. 75:11-79:17. As part of their business separation, on December 7, 2015, Vamsi asked Prasad via email "to make another depreciation for this year on inventory … I'm not sure how much will that reduce the inventory value but we need to do for tax planning." NP Tr. Vol. 1 pp. 186:14-187:21. Prasad responded via telephone and said that each territory should make its own determinations because they were ending the partnership and moving to separate accountants. *Id.* Thereafter, Vamsi fraudulently continued the practice of depreciating Charlotte and Dallas's inventory for tax purposes. NP Tr. Vol. 2 pp. 6:2-7:11; 16:4-17:2; 21:5-10; 29:18-30:10; NP Tr. Vol. 3 pp. 75:11-79:17.

Vamsi's tax accounting for East was also fraudulent. A working paper from the forensic accountants in the dissolution case discussed below, attached hereto as **Exhibit J**, shows that the Vamsi's East inventory was depreciated in QuickBooks—which is what he used for taxes—by $1,244,624 from the landed cost kept in the ERP system. Rather than fraudulently depreciating inventory, Prasad's West territory reported a higher value in QuickBooks for tax purposes than as reported via the ERP system. After the fraudulent depreciation, East appeared on paper to be less valuable than it really was. *Id.*, *see also* **Exhibit G** (NP Tr. Ex. D328). Because the locations Prasad received after dissolution did not participate in the tax fraud in 2015, Prasad received a lower value of inventory than he should have in the separation and was allocated a disproportionately greater share of the remaining line of credit.

Making matters worse, after dissolution Prasad sold slabs at his Southeast and West locations for full value that Vamsi had previously fraudulently depreciated. NP Tr. Vol. 1 pp. 186:14-187:21. Considering that the basis in those slabs was essentially zero, Prasad was effectively recapturing income that Vamsi avoided during the partnership. *See* Deposition of Brian Burns 311:13-312:9 (February 4, 2022), attached hereto as **Exhibit K** (explaining that the income tax on the written down inventory will eventually be paid when the inventory is sold for market value); 251:1-6 (explaining that whomever acquires the

written down inventory will "have to face the tax on the back side"). As a result, Prasad had to pay a massive tax bill on "phantom" income.[11]

Thus, Prasad wound up paying taxes on income he never received and wound up obtaining territories that Vamsi knew were less valuable than Prasad's true share. Because Prasad did not understand the intricacies and ramifications of Vamsi's tax fraud, he assumed that the excess income tax and lack of assets relative to Vamsi's territories resulted from Vamsi stealing from the partnership. Rather than explaining that the damage Prasad alone bore was a result of Vamsi's tax fraud, Vamsi closed his books entirely and fought all of Prasad's efforts to access the financial information necessary to learn the truth about what had happened. For these reasons, the benefits Vamsi received from his tax fraud should not be countenanced, and the rights in Dallas should be allocated to Prasad.

Vamsi's perjury is also a relevant consideration in the equitable allocation of the trademark rights. When litigation ultimately ensued over the freeze-out transactions involving Charlotte and Dallas, Vamsi claimed for the first time that he and Prasad were never partners in an attempt to avoid the consequences of his actions. This ignored years of benefits Vamsi received through the partnership and contradicted his previous testimony—throughout multiple lawsuits—recognizing and acknowledging that he and Prasad were 50/50 partners. The jury in the Partnership Case saw through Vamsi's fabrication, finding as fact that he and Prasad were indeed partners and that Vamsi owed Prasad damages. Whatever ownership Vamsi possessed in the Cosmos Marks in Dallas should therefore be terminated due to his extensive wrongful conduct over the course of nearly a decade. In contrast, Prasad has never attempted to stop Vamsi from using the Cosmos Marks in the locations Vamsi received under their 2015 territory allocation agreement.

Regardless, there are no facts indicating that the Vamsi Parties should receive rights in the Dallas market to Prasad's exclusion. The Court, exercising its equitable powers, could determine that the

---

[11] As described above, as part of a 2019 settlement agreement that resolved certain matters in dispute between Vamsi and Prasad, they agreed to a forensic accounting of Group's finances. The forensic accountants found no evidence that Vamsi stole cash or inventory from the partnership. *See* **Exhibit G** (NP Tr. Ex. D328). However, even though they were charged to do so, the forensic accountants declined to reallocate tax liabilities among Prasad and Vamsi (and consequently, the forensic accountants' valuations of the various territories prejudiced Prasad because Prasad did not take any fraudulent depreciation in 2015).

26

likelihood of confusion is not sufficiently great as to justify an injunction on either side in Dallas. If so, the Court could permit both parties to use the marks in Dallas. *C.f.*, *Lightfoot*, 2023 WL 2665732 and *Piccari*, 115 F. Supp. 3d at 515. Alternatively, if the Court determines that neither side has an equitable claim to the marks in Dallas and that the likelihood of confusion in that market is high, the Court is empowered to enjoin both sides from further use there. *See Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 11 U.S.P.Q.2d 1052 (D. Colo. 1988).

### VIII.    The remaining claims against the Prasad Parties all fail on procedural grounds.

After the discovery period ended, the Vamsi Parties filed procedurally improper "counterclaims" and then attempted to amend them without leave of Court on the day the parties filed their summary judgment motions. DE 127. Likewise, the New Cosmos Entities attempted without leave of the Court to filed Amended Counterclaims on April 1, 2022. DE 172. Thus, the Prasad renew their motions to dismiss on procedural and timeliness grounds. DE 118; DE 166; DE 176. Simply put, this late-stage attempt to inject new allegations is prejudicial. Allowing amendments and new claims after the close of discovery will only create a never-ending cycle that wastes both party and judicial resources.

Additionally, amendments filed after entry of a scheduling order require a showing of good cause. Rule 16(b)(4); *Nourison Rug Corp. v. Parvizian,* 535 F.3d 295, 299 (4th Cir. 2008). Good cause is required regardless of whether a party would have otherwise had a right to amend under Rule 15(a)(1). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243-44 (2d. Cir. 2007); DE 231 at 2 (collecting cases). The Vamsi Parties and New Cosmos Entities did not even attempt to show good cause for their respective amendments. With respect to the New Cosmos Entities, there is no good cause why slanderous statements allegedly occurring in August 2021 were not discoverable when they filed their original pleading in February 2022. Accordingly, this amended counterclaim should be dismissed or struck pursuant to Rule 12(f). Further, because their original bare bones slander pleading, DE 111, failed to "set forth who said what to whom, as well as when and where the defamatory statements were made," *Bowman v. Reid*, No. 5:14CV179-RLV, 2015 WL 4508648, at \*7 (W.D.N.C. July 24, 2015), *aff'd sub nom. Gosnell v. Catawba Cty.*, 646 F. App'x 318 (4th Cir. 2016), dismissal of the slander claim in its entirety is appropriate.

In addition to these procedural and timeliness problems, Vamsi also signaled in his amended reply that he now wants to argue that Prasad breached a partnership fiduciary duty owed to him. DE 127 at p. 35. However, the jury in the Partnership Case found that Vamsi owed Prasad $490,000 in damages. Any claim that Prasad breached a fiduciary duty owed to Vamsi was a compulsory counterclaim in the Partnership Case. By not raising the issue in the Partnership Case, Vamsi cannot raise it now. Fed R. Civ. Pro. 13(a).

On the substance of these late filed amended "counterclaims," to allow Vamsi to claim now that Prasad was his partner and that Prasad breached some fiduciary duty owed to Vamsi would sanction a "fraud on the court." Eugene R. Anderson & Nadia V. Holober, *Preventing Inconsistencies in Litigation with A Spotlight on Insurance Coverage Litigation: The Doctrines of Judicial Estoppel, Equitable Estoppel, Quasi-Estoppel, Collateral Estoppel, "Mend the Hold," "Fraud on the Court"*, 4 Conn. Ins. L.J. 589, 702 (1998). Allowing Vamsi to about face ignore his prior testimony in the Partnership Case and his presentations of the facts to this Court, just so that he can bring an untimely claim against Prasad would sanction the type of "pattern of false testimony" that cannot be allowed. *Id*.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of the Prasad Parties on all of the Vamsi Parties' and New Cosmos Entities' claims.

28

Respectfully submitted this the 25th day of October, 2023.

/s/ Daniel L. Colston

David W. Sar
N.C. State Bar No. 23533
Charles E. Coble
N.C. State Bar No. 253423
Clint S. Morse
N.C. State Bar No. 38384
Daniel L. Colston
N.C. State Bar No. 52083
Will A. Robertson
N.C. State Bar No. 53859
BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:      (336) 373-8850
Facsimile:      (336) 378-1001
Email:  dsar@brookspierce.com
         ccoble@brookspierce.com
         cmorse@brookspierce.com
         dcolston@brookspierce.com
         wrobertson@brookspierce.com

*Attorneys for Justh Holdings, LLC and
Hari Hara Prasad Nallapaty*