**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**Western Division**
**Civil Case No. 5:20-cv-47-D**

| | |
|---|---|
| VAMSI M. NALLAPATI and<br>IGM SURFACES, LLC,<br> Plaintiffs<br>          v.<br>JUSTH HOLDINGS, LLC, and<br>HARI HARA PRASAD NALLAPATY,<br> Defendants,<br>          v.<br>VAMSI M. NALLAPATI,<br>VINAY BHARADWAJ,<br>ROHIT GANGWAL,<br>COSMOS GRANITE DALLAS, LLC,<br>COSMOS GRANITE CHARLOTTE, LLC, and<br>COSMOS GRANITE CHARLESTON, LLC,<br> Counter Defendants and Counterclaim Plaintiffs<br>          v.<br>JUSTH HOLDINGS, LLC, and<br>HARI HARA PRASAD NALLAPATY,<br> Counterclaim Defendants | **PLAINTIFFS' AND<br>COUNTER DEFENDANTS'<br>RESPONSE TO<br>DEFENDANTS' SUPPLEMENTAL<br>MEMORANDUM OF LAW [DE 325]** |

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

A.  The jury received, and answered, only two questions ........................................................ 1

B.  Despite this Court's instruction that it expected a partnership ruling in the Windup Case to answer three core questions, Prasad never presented those questions to the jury .................................................. 1

C.  The jury was not asked to make, and did not make, any finding as to the nature or scope of the partnership ........................................................................................................................ 2

D.  Prasad's claim that the partnership found by the jury could only have started in 2005 is wrong; the jury had ample evidence to reject Prasad's theory of a 2005 partnership .................................................. 3

E.  Summary Judgment for Prasad is not appropriate .............................................................. 4

    1.  Prasad's assertion that facts in his brief are either undisputed or were found in Prasad's favor by the Windup Case are not accurate ......................................................................................... 4

    2.  The Parties dispute whether the trademarks were property of any purported partnership ..................... 5

    3.  Prasad's brief impermissibly introduces new and unclear claims .............................................. 5

F.  Substantial facts continue to support Vamsi's claim that he is the owner of the Cosmos Marks .................. 5

G.  Even if the jury had decided the Cosmos Marks belonged from inception to a Vamsi/Prasad partnership, Prasad is wrong as to the implications of that finding ........................................................................................ 6

    1.  The separation of Group did not include trademark rights .......................................................... 6

    2.  Prasad's own theory invalidates his trademark applications and registrations ........................... 8

    3.  Prasad's claims of priority stemming from his registration or other rights also fail ................. 9

H.  The remainder of Prasad's brief largely addresses non-issues, and claims remain for trial ............................ 9

CONCLUSION ........................................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*American Forests v. Sanders,*
    54 USPQ2d 1860 (TTAB 1999), aff'd, 232 F.3d 907 (Fed. Cir. 2000) ................................................. 8

*Conolty v. Conolty O'Connor NYC LLC,*
    *2014 TTAB LEXIS 269* (TTAB 2014) ................................................................................................ 7, 8, 9

*Cornaby's LLC v. Carnet, LLC,*
    2017 U.S. Dist. LEXIS 130716 (D. Utah Aug. 15, 2017) ..................................................................... 7, 8

*Daniel Group v. Service Performance Group, Inc.,*
    753 F. Supp. 2d 541 (E.D.N.C. 2010) ...................................................................................................... 6

*Davis v. McLaughlin,*
    No. 87-3085, 1988 WL 105276 (4th Cir. Oct. 4, 1988) .......................................................................... 5

*Holiday Inn v. Holiday Inns, Inc.,*
    534 F.2d 312 (CCPA 1976) ........................................................................................................................ 9

*In re Weiss,*
    111 F.3d 1159 (4th Cir. 1997) ................................................................................................................... 2

*Lingle v. Chevron U.S.A. Inc.,*
    544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) ........................................................................ 7

*Lyons v. Am. Coll, of Veterinary Sports Med. & Rehab.,*
    859 F.3d 1023 (Fed. Cir. 2017) ............................................................................................................ 8, 9

*Norton v. Larney,*
    266 U.S. 511 (1925) .................................................................................................................................... 4

*Scott v. Harris,*
    550 U.S. 372 (2007) .................................................................................................................................... 5

*Variety Stores, Inc. v. Wal-Mart Inc.,*
    359 F. Supp. 3d 315 (E.D.N.C. 2019) .................................................................................................... 10

**Statutes**

N.C. Gen. Stat. § 59-59 .................................................................................................................................... 4

N.C. Gen. Stat. § 59-60 ................................................................................................................... 2

N.C. Gen. Stat. § 59-62 ................................................................................................................... 9

N.C. Gen. Stat. § 59-63 ................................................................................................................... 4

N.C. Gen. Stat. § 59-67 ................................................................................................................... 2

N.C. Gen. Stat. § 59-68 ................................................................................................................... 2

N.C. Gen. Stat. § 59-70 ................................................................................................................... 2

**Treatises**

2 McCarthy on Trademarks and Unfair Competition §16:40 (4th ed. 2016) ........................................................... 7

Case 5:20-cv-00047-BO     Document 328     Filed 11/15/23     Page 3 of 14

## INTRODUCTION

Prasad's memorandum inaccurately characterizes the jury verdict in the Windup Case, and all his arguments and conclusions flow from that inaccurate characterization. The leaps made by Prasad are neither supported by the jury's verdict nor the factual record. They are merely last-ditch attempts to spin failed theories into brand new ones (and a belated summary judgment motion, which is altogether improper at this point), masked as purported underpinnings of Prasad's defenses and counterclaims.

Critically, Prasad's unilateral proclamation of what assets constituted the jury's "partnership" is unsupported. In particular, Prasad's claims that the "partnership" owned the Cosmos Marks is wishful thinking. Such a determination is neither found in the verdict of the Windup Case, in its judgment, nor in any other conclusion of the Windup Case's judge and jury. That determination remains for the jury in this case.

### A. The jury received, and answered, only two questions

The Windup jury was instructed to consider and determine only two questions: "First, did a partnership exist between Prasad and Vamsi?" and second, "if you answered yes, what amount of damages is Prasad entitled to recover from Vamsi?" DE 326-4 at 148:2-7. Nothing required any determination as to the origin or scope of the partnership. The jury returned a simple "yes" to question one and then determined that $490,000 was the fair value to be awarded in question two. *Id* at 153:4-6.

### B. Despite this Court's instruction that it expected a partnership ruling in the Windup Case to answer three core questions, Prasad never presented those questions to the jury

This Court—based on Prasad's representations to it that "partnership issues are being litigated in the companion [Windup] Case" [DE 129 at 6]—held in its Summary Judgment order that claims at issue were "inextricably tied to whether there was a partnership between Prasad and Vamsi, whether the trademarks are partnership property, and the rights of each individual following the dissolution of the partnership case."[1] DE 312 at 12. But Prasad did not present trademark questions to the jury or object to the charge. Judge Boyle reminded Prasad that his "other" claims did not go to the jury, DE 326-4 at 151:22-24. The verdict disposed of all his claims, including his baseless fraud allegations. The winding up of whatever Vamsi/Prasad

---

[1] Plaintiffs brought the instant lawsuit and have always alleged that Vamsi is the rightful owner of the marks--not an asset of a partnership with Prasad. Prasad <u>later</u> brought the Windup Case instead of filing counterclaims, claiming a partnership with Vamsi and seeking compensation related to its dissolution.

"partnership" existed has been completed, and the partnership has ended. DE 326-4 at 153:4-12. *In re Weiss*, 111 F.3d 1159 (4th Cir. 1997) ("The partnership continues until the partners complete the 'winding up' of partnership affairs."); N.C. Gen. Stat. §§ 59-60, -67, -68, -70(1). The Windup case is closed. Prasad's claims of fraud (including the entirety of Section VII of Prasad's brief), and all other issues relating to his purported squeeze-out from partnership affairs and his unhappiness with his business treatment by Vamsi, are over.

## C. The jury was not asked to make, and did not make, any finding as to the nature or scope of the partnership

The circumstances surrounding the jury deliberation do cast some light on the jury's thinking, showing the jury appeared to be focusing on the Texas entity as the potential "partnership" and the source of any remaining payment due to Prasad. Vamsi sent Prasad $490,000 for his share of the Texas assets, but Prasad sent it back. DE 326-2 at 148:8-18. The jury concurred with Vamsi on the amount but asked the Court whether it could award $490,000 without finding a partnership ("if we say no to being a partner, can Plaintiff still be awarded money for Texas"). DE 326-4 at 152:8-16. The Court said no. *Id.* The result was a verdict granting an award directly relating to Texas, tied to a finding of a partnership—which, if it was indeed the intended "partnership," was formed in 2016, not 2005. *Id.* But as discussed in Plaintiffs' initial brief, multiple theories as to partnership formation were possible (most of which commenced long after rights in the Cosmos Marks had been established), and none were specified by the jury.

To be clear, the jury's verdict did not include any itemization of trademarks or other intangible assets that were encompassed within the unidentified "partnership." The only "partnership" assets reflected in the jury award are those of the Texas entity whose fair value the jury obviously determined and awarded. Any conclusion that the partnership or its assets extended beyond Texas would be speculative.

Rather, the Windup jury decided Prasad's entitlement to damages and determined that there was "a partnership" in support of that damage award. *See* Section B above. The parameters and date of the alleged formation of the partnership and its dissolution remain unknown. All that is known is that the "partnership"—whatever it was—has now been fully wound up and ended.

**D. Prasad's claim that the partnership found by the jury could only have started in 2005 is wrong; the jury had ample evidence to reject Prasad's theory of a 2005 partnership**

Prasad now suggests the Windup Case evidence supported only one conclusion: a 2005 partnership between Prasad and Vamsi. DE 325 at 2. The trial record, however, shows Prasad proffered multiple theories and evidence as to partnership formation. Even in closing argument, Prasad argued not only a 2005 partnership but also a backup theory that the partnership was in one or more of the Vivid entities: "when they made the investment in Vivid – this is really what's brought us here today – in 2009." DE 326-4, Ex 1-3 at 101:11-14. And it was Prasad who introduced evidence of the <u>new</u> Texas partnership that was to commence in or around 2016. DE 326-2 at 15:18-20; 122:13-12:2. Other examples of Prasad's "partnership" evidence are provided in Plaintiffs' principal brief. *See*, *e.g.*, DE 326 at 20 and footnote 6.

Prasad's own testimony shows that Vamsi alone ran the business that supposedly constituted his 2005 partnership with Vamsi. DE 326-2 at 75:11-13; 82:12-14; 86:1-3. And the parties presented conflicting testimony as to any involvement by Prasad in decision-making or the origin and initial use of the Cosmos name. DE 326-3 at 186:9-189-8; DE 133 at 42:4-44:8. No assignments were introduced to document the purported contribution by Vamsi of his personal trademark assets to a 2005 (or any other) "partnership."

The jury also had substantial reason to doubt Prasad's credibility and his alleged personal involvement in any early partnership since the evidence and his own testimony showed that his purported contributions actually were made by his father's company, DSG, one supplier of stone purchased by Vamsi; and that the "special credit terms" to Vamsi were granted by DSG and Prasad's father, not Prasad. DE 326-2 at 67:21-68:11; DE 326-3 at 178:21-108:16; 181:20-182:12; DE 134 at 53:10-54:13; 57:10-59:24; 70:24-74-5. Prasad testified that although his father's permission was necessary for him to personally participate in Vamsi's business, his father did not grant that permission when asked to do so. DE 326-2 at 67:21-68:11; DE 134 at 29:24-30:6, 35:13-19; 36:21-37:17. Nor could Prasad produce any corporate records showing any role he played in getting special deals for Vamsi, although corporate records existed for his transactions with other companies. DE 134 at 73:12-74:2; 130:16-134:14; DE 326-2 at 161:16-167:1. Vamsi testified that his business relationship was with DSG, not Prasad personally. DE 133 at 30:2-31:16. Evidence shows that the relationship between Vamsi's company and DSG did not change until after Prasad's father died, when Prasad

asked that payments previously made to DSG be instead made to him personally. DE 133 at 83:14-23; DE134 at 85:17-87:17, 89:17-95:19. Again, no evidence of Prasad's personal involvement is found in any records, whether within the USA companies or in DSG's records. DE 134 at 73:12-74:2; 130:16-134:14.

Theoretically, a Vamsi/Prasad partnership in the Vivid entities might have been found, since that investment represented the first time the names of both Prasad and Vamsi (or their respective holding companies) appeared as joint owners of any share of any business. DE 326-2 at 94:24-99:1. However, if a partnership in the Vivid entities ever existed, it ceased to exist in October 2015 for any purpose other than dissolution, based on Prasad's own testimony that it dissolved in October 2015. *Id* at 168:9-16.

Partnership law in North Carolina dictates permissible and impermissible activities after dissolution and during the windup. Apart from winding up affairs, partners cease "to be associated in the carrying on … of the business" and "dissolution terminates all authority of any partner to act for the partnership." N.C. Gen. Stat. §§ 59-59; 59-63. Thus, partners cannot—within the scope of the partnership that has been dissolved--buy new assets or start new businesses. As of the date the original partnership claimed by Prasad indisputably dissolved and could undertake no new activities other than winding up, that original partnership had no involvement in any Texas operation. Since the dissolved prior partnership, if it ever existed, could not have been involved in establishing the Texas operations, the jury's award of damages, clearly tied to the Texas entity, necessarily related to a different, later-formed partnership. DE 326-4 at 152:8-16; DE 326 at 20; n.6.

**E.  Summary Judgment for Prasad is not appropriate**

Prasad urges the Court to consider his brief as another motion for summary judgment, but they are not entitled to such relief. Prasad's new requests come too late, long after the deadline for such motions, and hosts of material facts are disputed.

    **1.  Prasad's assertion that facts in his brief are either undisputed or were found in Prasad's favor by the Windup Case are not accurate**

Prasad characterizes alleged facts as undisputed or as found in Prasad's favor (DE 326, n. 3) but the Windup record and verdict are insufficient for *res judicata* or preclusion to apply as they suggest. "[R]es judicata does not apply to points which come under consideration only collaterally or incidentally." *Norton v. Larney,* 266 U.S. 511, 517 (1925); *Davis v. McLaughlin,* No. 87-3085, 1988 WL 105276, *1 (4th Cir. Oct. 4,

1988)("the acts are not the same; There is no res judicata bar to the present action, because the issues now before the court have not been previously adjudicated."). No preclusive effect can be given to determinations that were not made. Final determinations of trademark ownership, common law rights, invalidity, and cancellation remain the province of a jury trial before this Court.

### 2. The Parties dispute whether the trademarks were property of any purported partnership

Most critically, Prasad's claims that a partnership between Vamsi and Prasad owned the Cosmos trademarks have been and remain the subject of vigorous contest following the Windup trial and verdict. As to that issue, Prasad proposes a one-sided assessment of the credibility of his allegations, ignoring the requirement that courts must view all alleged relevant facts in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Plaintiffs dispute that the trademarks ever belonged to any "partnership," and as shown in Section F below, credible evidence supports Plaintiffs' claim. Thus, the Court must assume Vamsi would prevail on that issue, not Prasad; and all of Vamsi's legal claims thus have continuing viability.

### 3. Prasad's brief impermissibly introduces new and unclear claims

As addressed in Plaintiffs' initial brief, Prasad's theories of ownership have continued to shift and deviate—including, notably, that all theories asserted in Prasad's prior summary judgment motion have been denied and subsequently dropped by Prasad. *See*, DE 326 at 10-17; DE 129. His now-reinvented summary judgment theories rest on wholly new positions as to ownership – namely (1) that Prasad came to solely own the Cosmos trademarks in specific territories via a split of Group; [2] and (2) oddly, that Prasad would have priority over the New Cosmos entities due to some theory that the Charlotte location owned trademark rights (a theory that Prasad's own "revocation of license" contradicts - DE 237-11). DE 325 at 14-16, 22-23. Not only were these not part of Prasad's prior counterclaims and thus, improper, but they are unsupported.

### F. Substantial facts continue to support Vamsi's claim that he is the owner of the Cosmos Marks

Vamsi's position has consistently been that he personally owns sole rights in the marks, having chosen the COSMOS mark and placed it in use before any business involvement by Prasad, and having never

---

[2] At a point in time, many Cosmos locations were rolled up into a single ownership structure under a holding company called CGM Group, LLC ("Group"). DE 131 App. A at ¶ 160.

transferred his rights to any "partnership" with Prasad, personally at any time.[3] DE 133 at 42:4-44:8, 220:4-7; DE 326-3 at 178:9-12. Use of the Cosmos Marks by others was always based on a license granted by Vamsi. DE 133 at 105:6-15; 120:14-19; 123:16-23. Substantial facts of record support Vamsi's position that he originated and owned, from inception, the Cosmos Marks and was the owner of the Cosmos Marks. DE 133 at 42:4-44:8, 220:4-7; DE 326-3 at 178:9-12.

As part of his trademark ownership, Vamsi licensed the use of the Cosmos Marks to other businesses, including those that he was only partially involved in and some that he had no direct ownership. DE 133 at 105:6-15; 120:14-19; 123:16-23. Anywhere Prasad was involved, Vamsi was involved. DE 128-3 at 372:11-21; DE 326-2 at 201:19-202:8; DE 133 at 119:4-10. The businesses that Vamsi worked with believed their permission to use the Cosmos Marks came from Vamsi personally, and not any unknown partnership or Prasad. DE 132 at 37:17-38:11. Vamsi personally owned the domain that used the Cosmos Mark and on which he advertised his licensees' businesses. DE 133 at 42:19-43:1. He also personally registered a Cosmos Mark, in his own name. DE 133 at 219:6-220:7 and DE 56-5.

In short, testimony of Vamsi as well as third-party operating affiliated businesses provide substantial evidence that Vamsi was operating as an informal franchisor. DE 133 at 105:6-15; 119:4-10; 120:14-19; 123:16-23; DE 132 at 37:17-38:11. Further, claims by Prasad to have been asked to look at logo designs do not amount to control or origination of the underlying mark, let alone ownership. His involvement was not essentially different from that of the other licensee operators, who also were asked to provide suggestions for the betterment of the overall business. DE 133 at 217:17-22; DE 327-9 at 162:1-6, 181:22-182:13.

**G. Even if the jury had decided the Cosmos Marks belonged from inception to a Vamsi/Prasad partnership, Prasad is wrong as to the implications of that finding**

**1. The separation of Group did not include trademark rights**

Prasad's new theory that his exit from Group resulted in an assignment to him of exclusive

---

[3] Plaintiffs maintain and will establish at trial that Vamsi is the owner of the marks at issue as discussed in Section F herein and DE 326 at 16-17. *Daniel Group v. Service Performance Group, Inc.*, 753 F. Supp. 2d 541, 546-47 (E.D.N.C. 2010) ("[I]t is not registration, but only actual use of a designation as a mark that creates rights and priority of others."… "Neither application for nor registration of a mark at the federal level wipes out the prior nonregistered, common law rights of others.") (citations omitted).

trademark rights in West and Southeast is wrong. The division of Group's assets was set out in successive written agreements, with the last and controlling agreement expressly—at Prasad's own insistence—reserving for future litigation and decision all resolution of trademark rights in the Cosmos Marks. DE 18-7 at 13. In short, Prasad did not exit Group with any trademark rights attached to any existing business; instead, the disposition of those rights (which Vamsi claimed were entirely his own) awaited further determination—this, per Prasad's own positioning, from which he cannot now run. *See Id.*

Prasad's reliance on *Cornaby's* is similarly flawed. *Cornaby's* presented an undisputed partnership. Its date of formation and identity of partners were also uncontested. *Cornaby's LLC v. Carnet, LLC*, 2017 U.S. Dist. LEXIS 130716, *2, *6. Early use by the senior user was not only "too sporadic, casual or transitory" to establish ownership of the mark initially, but she had abandoned all use (and thus abandoned any possible prior-acquired rights in the mark) five years before the partnership formed. *See id.* at *16. Moreover, both territorial division and sharing of trademark rights in certain territories were agreed. *See id.,* at *19-*22, n. 5.[4]

In contrast, here Vamsi established rights outside of any partnership with Prasad. (DE 133 at 42:4-44:8; DE 326-3 at 178:9-12. DE 133 at 42:4-44:8; DE 326-3 at 178:9-12). Vamsi took multiple actions, as noted in Section F above, to assert his personal ownership of the Cosmos Marks (including obtaining a registration and domain in his personal name).[5] Vamsi is the originator, senior user, and has had continuous control of the marks since their inception, granting licenses to others[6] and controlling the marked products.[7]

---

[4] Also, *Cornaby's* applies a 10th circuit presumption that co-equal rights arise out of territorial divisions. Noting such arrangements as "ill-advised," the court pointed to Professor McCarthy having outlined problems with joint ownership of marks on dissolution of a partnership, including confusion and potential forfeiture of mark rights. *See id.*, n. 5 citing 2 McCarthy on Trademarks and Unfair Competition §16:40 (4th ed. 2016).

[5] While that registration lapsed, even cancellation does not negate common law rights which were established by Vamsi outside of any partnership with Prasad. DE 133 at 42:4-44:8; DE 326-3 at 178:9-12. DE 133 at 42:4-44:8; DE 326-3 at 178:9-12; *See also*, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

[6] Vamsi licensed to businesses where he had no direct ownership, which is evidence that Vamsi used the Cosmos Marks outside of the partnership and did not abandon his own use of the mark in favor of any partnership use. This is contrary to Prasad's claims and reflects a faulty application of *Cornaby's*. DE 133 at 105:6-15; 120:14-19; 123:16-23; DE 132 at 37:17-38:11.

[7] *See Conolty v. Conolty O'Connor NYC LLC, 2014 TTAB LEXIS 269*, *24 (in treating a mark as partnership asset, the court expressly recognized the ***joint*** nature of the parties' control of quality of the products by and

DE 326-3 at 189:4-18. *See also, Lyons v. Am. Coll, of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1027 (Fed. Cir. 2017). Importantly, unlike *Cornaby's*, Vamsi never abandoned use of the Cosmos Marks, and Vamsi disputes that any mark was subsumed in any partnership, let alone one with Prasad personally. And at a minimum, Prasad's positions at the separation of Group make plain that Vamsi did not agree to "share" any trademark rights at any point in time. *See* Section I.1, *supra*; DE 18-7 at 13.

### 2. Prasad's own theory invalidates his trademark applications and registrations

Prasad's trademark applications and registrations are void *ab initio* because, by his own admission, he was not the sole owner of the marks. Under Prasad's new theory, "Prasad and Vamsi retained joint ownership of the marks after the partnership dissolution" in some areas and had "coequal rights to sell products and services and to use the marks" throughout a large portion of the United States. DE 325 at 14,19.

Not only does this theory run contrary to Prasad's express reservation of trademark rights issues for later resolution when Group split, *See* Section H.1, *supra*; DE 18-7 at 13, but it would have completely forbidden any right on his part to have filed trademark applications without including Vamsi as an applicant. It is undisputed law that where there are joint owners, both must join in any application. *American Forests v. Sanders*, 54 USPQ2d 1860 (TTAB 1999) (finding application *void ab initio* because "the true entity which had a bona fide intent to use the mark was not Sanders an individual, but rather a partnership consisting of Stephen Sanders and Barbara Sanders"), *aff'd*, 232 F.3d 907 (Fed. Cir. 2000). Because Prasad claimed to be the **sole** owner (when in truth he was not) of the "Cosmos Granite & Marble," the 3-tile logo, and "Vivid Cosmos" trademarks when he filed for them, and again when he filed the pending Cosmos applications, all said registrations and applications are void *ab initio*. [8] *Conolty, 2014 TTAB LEXIS 269*, *24 (voiding application where applicant was not the sole owner of the mark at issue, but rather held just a joint interest in the mark). "[R]egistration by one who did not own the mark at the time of filing renders the underlying

---

perception of disputing parties *together* being the source of the marked products.) This was not the case for Vamsi and Prasad. Throughout their ventures, Vamsi consistently maintained control over use of the marks and control of the marked products and the licensees believed that Vamsi was always the source of the license, not some unknown partnership with Prasad. DE 326-3 at 189:4-18; DE 132 at 37:17-38:11).

[8] Prasad's footnote 10 is wrong. The Court never ruled on any aspect of *void ab initio* other than to rule out one potential basis: fraud. DE 312 at 11.

application void ab initio." *Lyons,* 859 F.3d at 1027; *Holiday Inn v. Holiday Inns, Inc.,* 534 F.2d 312, 319, n.6 (CCPA 1976*)* ("One must be the owner of a mark before it can be registered.").

Whether the marks were still within the partnership at the time the applications were filed, as Prasad previously alleged (based on the fact that dissolution does not terminate a partnership; the partnership continues after dissolution until the winding up of partnership affairs is completed." N.C. Gen. Stat. § 59-62(a) (2005)), or whether the marks were jointly owned following the partnership, Prasad's applications and procurement of registrations based on purported sole ownership were improper and void. Prasad cannot rely on those registrations to support his remaining positions in his brief, including exclusivity or priority claims.

*Conolty,* on which Prasad heavily relies, makes clear he cannot have it both ways. Prasad cannot claim joint ownership of the marks (DE 325 at 19) yet base trademark applications on purported exclusive ownership. *Conolty* at 9. Any application to register a mark by anyone other than its exclusive owner(s) is void. *Id; see also,* note 11, *infra.* As in *Conolty*, the named applicant (Justh) is solely controlled by Prasad. As in *Conolty*, Prasad now claims no more than a joint interest in the Cosmos Marks. Neither Prasad nor Justh is the exclusive owner. Thus, as in *Conolty*, all the applications must be declared void *ab initio.*

**3. Prasad's claims of priority stemming from his registration or other rights also fail**

Prasad sets out yet another new theory as to why Prasad would have exclusive rights in Charlotte and Charleston, claiming for the first time that Vivid NC owned trademark rights that were not transferred to the New Cosmos Entities. This new theory is also factually inconsistent with record evidence and Prasad's own prior position. Prasad has never before alleged that anyone other than Prasad, Vamsi, or the partnership owned the rights. In fact, it is well-established that Vivid NC was simply a licensee of the marks, as reflected even in Prasad's own letter purporting to revoke the license. (DE 237-11).

**H. The remainder of Prasad's brief largely addresses non-issues, and claims remain for trial**

A dispute as to ownership of the Cosmos Marks remains. Until a jury makes that determination, all outstanding claims remain: including confusion, unfair trade practices, conversion, civil conspiracy, and slander *per se. See e.g.,* DE 326 Plaintiffs' brief at 18-19.

Prasad now incorrectly claims that only a trial on equitable grounds remains. He is wrong. DE 325 at

23-27. Plaintiffs' claims are rooted in legal and equitable issues[9] and seek actual damages in addition to disgorgement and fees. DE 56, Counts I-V, Prayer for Relief. Plaintiffs are entitled to a jury trial. *See Variety Stores, Inc. v. Wal-Mart Inc.*, 359 F. Supp. 3d 315, 331 (E.D.N.C. 2019) ("holding that the right to a jury trial existed in a case containing both legal and equitable issues") (internal citations omitted).

Moreover, the jury verdict in no way addressed confusion or competition among the parties. For example, the 100-mile distance-from-store territory within which Prasad asserts his Greenville location would sell, overlaps substantially with the territory of Vamsi's Charlotte and Charleston locations. *See* DE 202-3. There also are reports and testimony concerning actual confusion. DE 132 at 150:8-16. Prasad's claims that Vamsi is estopped from arguing confusion are unfounded. DE 325 at 16. The report referenced by Prasad reviewed competition between Raleigh, Charlotte, and Greensboro locations. It did not address competition with the Atlanta location or others. DE 133 at 25. In fact, subsequent letters from Prasad's attorneys demanded that various locations stop competing with the Atlanta location. DE 326-4 at 130:22-131:13 and Vamsi's Trial Ex. 321. Again, Prasad wants it both ways.

## CONCLUSION

The Windup Case did determine that a partnership existed, though silent as to origin and scope, eliminating any need to revert to novel theories of partnership law by determining and awarding the fair value of Prasad's share of the partnership assets, which were retained by Vamsi. The decision did dispose of Prasad's registrations and applications, which are indisputably *void ab inito*. But it left open multiple issues as to which contested facts remain for decision, as explained above and in Plaintiffs' initial brief and set out in Plaintiffs' initial conclusion. Prasad's attempt to have his Court adopt his unfounded new case theory fails, and the Court should enter an order as sought by Plaintiff in Plaintiffs' initial brief.

---

[9]Prasad attempts to re-litigate the Windup Case and prior resolved cases, under the guise of previewing his so-called "equitable trial." DE 325 at 23-27. Separation of the parties' interests in Group has long been resolved. Section G1, *supra*. In the Windup Case, Prasad attempted to prove bad acts and fraud by Vamsi, and sought millions in damages. *Id.* Those claims were rejected by the jury, which awarded only the undisputed value of his interest in the Texas entity, which he already had been paid but had wrongly returned. Prasad is estopped to relitigate claims of wrongdoing he has already either settled or lost at trial, and his attempt to do so in an "equitable trial" is estopped. *See also* DE 326 at 4-5, 18.

Respectfully submitted this 15th day of November 2023.

/s/ K. Alan Parry
K. Alan Parry
 NC Bar No. 31343

**Parry Law, PLLC**
100 Europa Drive
Suite 351
Chapel Hill, NC 27517
T - 919.913.3320
F - 919.869.2600
kap@parryfirm.com

/s/ Susan Freya Olive.
Susan Freya Olive
 NC Bar No. 7252

Brian J. Crews
 NC Bar No. 45964

**OLIVE & OLIVE, P.A.**
500 Memorial Street
P.O. Box 2049
Durham, NC 27702-2049
Phone: (919) 683-5514
emailboxEDNC@oliveandolive.com

**Counsel for Vamsi Nallapati and IGM Surfaces, LLC**

/s/ *Joseph A. Schouten*
Joseph A. Schouten
 N.C. State Bar I.D. No.: 39430
email: jas@wardandsmith.com

Christopher S. Edwards
 N.C. State Bar I.D. No.: 48385
email: csedwards@wardandsmith.com

**Ward and Smith, P.A.**
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone: 919.277.9100
Facsimile: 919.277.9177

**Counsel for Vinay Bharadwaj, Rohit Gangwal, Cosmos Granite Dallas, LLC,
Cosmos Granite Charlotte, LLC, and Cosmos Granite Charleston, LLC**